40369, 40370. SHOEMAKE et al. v. WOODLAND EQUITIES, INC. et al. (two cases).
40371. WRIGHT v. WOODLAND EQUITIES, INC. et al.

SMITH, Justice.

This case raises the question of whether it was error for county zoning authorities to deny appellees' application for a building

permit. Summary judgment was granted by the trial court in favor of the landowner, Woodland Equities, Inc., and its lessee, Martin Marietta Corporation, who sought mandamus to require the Forsyth County Commissioners and its planning director to issue a permit allowing them to construct an office building at a rock quarry site. The Commissioners appeal in Case Nos. 40369 and 40370. A neighbor, who was denied intervention in the case, appeals that denial in Case No. 40371. We affirm.

Appellee Woodland Equities, Inc. (Woodland) was formed by Emory Lipscomb, its president and attorney, for the sole purpose of purchasing suitable land and developing a stone crushing operation in southern Forsyth County. In a series of transactions beginning in July 1979, Woodland acquired approximately 833 acres of undeveloped land in southern Forsyth County which it planned to lease for development as a quarry. When purchased, the land carried an "agricultural" designation under the applicable Forsyth County zoning ordinance, and mining was specifically designated as a permitted use in districts zoned agricultural under the ordinance. Prior to buying the land, attorney Lipscomb in the spring and early summer of 1979 conferred with two Forsyth County officials to be certain that the land was suited for the intended development as a rock quarry. Lipscomb, himself a former county attorney for Forsyth County, testified that in the spring of 1979 he checked county records in the courthouse, then telephoned and wrote to Edsel Martin, the county zoning coordinator, to inquire about the present zoning of the land he proposed to buy. He visited Martin at the county zoning offices, and the two of them carefully reviewed the status of the lots in question, referring to county zoning maps and files. Lipscomb further testified that he did this because "I wanted to make sure and get assurances from officials in a position to tell me what the zoning for this tract was," and that Woodland would never have purchased the land without first confirming that mining was an approved use. In a letter dated July 26, 1979, Martin referred to the specific lots in question and confirmed that the land was presently zoned "agricultural." (Both Lipscomb, the former county attorney who helped write the zoning ordinance, and Martin, the present zoning administrator, unquestionably knew that this meant that mining was a permitted use of the land under the then-existing ordinance.) Lipscomb also consulted with John Shinall, the Forsyth County county attorney, during this period. By letter dated May 25, 1979, Shinall assured Lipscomb that mining was indeed a permitted use of land zoned "agricultural" in Forsyth County.

Relying on these assurances, as well as the existing zoning, Woodland spent over $1 million to purchase the land, buying the last

parcel on July 31, 1981. Negotiations were begun with appellee Martin Marietta Corporation (Martin Marietta) in August 1979, and in September 1980, Woodland granted Martin Marietta a long-term lease of the land for purposes of development as a rock quarry. Martin Marietta paid Woodland $50,000 when the lease was executed, and has since incurred costs in excess of $90,000 for testing, drilling and engineering work done in preparation for developing the land as a quarry. In addition, Woodland has since 1979 spent some $66,000, above and beyond the purchase price, for engineering studies, surveys, maps, aerial photography, and other quarry-related matters.

In July 1981, after appellees' intentions to develop a quarry in southern Forsyth County became publicly known, the Forsyth County Commission by resolution enacted Ordinance No. 9, the so-called "environmental review" ordinance. This measure conditioned the issuance of permits for new industrial and commercial developments in the county on a review, by an ad hoc citizens committee, of the potential adverse environmental effect of the proposed development and the committee's approval of the proposed use. Less than a month later, the ordinance was again adopted by unanimous vote of the five-member Forsyth County Commission, this time as a formal amendment to the existing zoning ordinance. At trial three of the members of the county commission testified that their purpose in passing Ordinance No. 9 was "to stop the rock quarry" from being built. In November 1981, the commission adopted an ordinance which for the first time removed mining operations from the uses permitted in agriculturally zoned districts.

An interesting sidelight to the legislative activities of the county during this period was its treatment of the Georgia Marble Company (Georgia Marble), the operator of the only existing quarry in Forsyth County. In November 1981, subsequent to adoption of the two environmental ordinances and only five days before mining was withdrawn as a permitted use in agriculturally zoned districts, the county issued Georgia Marble a certificate of zoning compliance which allowed it to continue and, in some cases, to expand its quarry operations.

In October 1982, Woodland and Martin Marietta applied to the appropriate county officials for a permit to construct an office building as part of its proposed mining operations on the quarry site. The planning director of Forsyth County reviewed the application and refused to issue a permit because (1) as a result of the 1981 ordinance, mining was no longer a permitted use on land zoned as an agricultural district, and (2) Woodland and Martin Marietta had failed to obtain a county environmental development permit.

Woodland and Martin Marietta then filed this mandamus action to compel issuance of the building permit. The case proceeded to trial where, at the conclusion of the plaintiffs' evidence, the trial judge granted summary judgment for Woodland and Martin Marietta, ordering that the requested building permit be issued to them. The commissioners and planning director of Forsyth County bring this appeal.

1. The trial court properly granted summary judgment for Woodland and Martin Marietta and found that the challenged zoning ordinances were void because they were arbitrarily enacted and discriminatorily applied to appellees.

Our cases establish a two-part analysis of claims of discriminatory application of local zoning laws: first, the challenged ordinances must on their face be reasonable and non-discriminatory, *Snow v. Johnston,* 197 Ga. 146 (28 SE2d 270) (1943); and second, they must be applied in a non-discriminatory manner, *Matthews v. Fayette County,* 233 Ga. 220 (210 SE2d 758) (1974). These Forsyth County ordinances fail on both counts.

Appellants assert that since neither the environmental review ordinance nor the mining classification on their face prohibits quarrying, no discriminatory intent can be attributed to the county commissioners in enacting them. But this assessment of the events leading to the denial of appellees' building permit flies in the face of all the known facts, including the uncontradicted testimony of three of the county commissioners (a voting majority) to the effect that both the mining classification change and the environmental review ordinance were adopted for one reason — "to stop the quarry." It is true that the amended ordinance did not "on its face" ban quarrying on appellees' land; however, the November 1981 ordinance which removed "mining operations" as a permissible use in agriculturally zoned districts did set up a separate classification designated as a "mining operations district," and it went on to define "mining" as "any type of operation, whether strip, surface, or subsurface, in which sand, rock or any other mineral or element is removed from the earth." Clearly appellees' proposed quarry operation fell within this broad definition, and consequently their intended use was arbitrarily barred by the amended ordinances. The content of the ordinances, the circumstances surrounding their hasty adoption, and the county's flat denial of appellees' application for a building permit made out a case of discriminatory enactment as a matter of law.[1]

---

[1] The facial validity of the "environmental review" ordinance is, at best, questionable. Many of the standards set out for assessment of a planned project, such as whether a project would create "objectionable or unhealthy pollution" or be

With respect to unequal enforcement, the trial court found that the issuance of a certificate of zoning compliance to Georgia Marble, the only other quarry operator in Forsyth County, under the circumstances present here, was sufficient proof of discriminatory enforcement of the ordinance to demand summary judgment for appellees, and we agree. The certificate issued to Georgia Marble went well beyond protecting mere existing uses and authorized both expansion and relocation of the company's existing operation. Given all the circumstances surrounding the denial of appellees' application for a permit, summary judgment on Count II of appellees' complaint was proper.

2. In light of our disposition of appellees' claim of discrimination in the enactment and application of the challenged zoning ordinances, we do not reach their argument that the right to a building permit became vested because of substantial expenditures made in reliance on assurances by county officials. See *Barker v. County of Forsyth,* 248 Ga. 73 (281 SE2d 549) (1981).

3. In Case No. 40371, a neighbor appeals the refusal of the trial court to allow intervention. The neighbor assigns as error the appointment of a senior judge from outside the administrative district by the administrative judge of the district which includes Forsyth County, following disqualification of the Forsyth County superior court judge assigned to hear this case. The neighbor urges that this appointment process violates *Ferry v. State,* 245 Ga. 698 (267 SE2d 1) (1980), and OCGA § 15-5-5 (Code Ann. § 24-3306a).

In *Ferry,* we questioned the propriety of a disqualified judge naming the successor judge, and urged the administrative districts to promulgate rules for the impartial assignment of judges to preside in cases of disqualification. Here, the disqualified judge did not appoint his successor; he notified the district administrative judge of his disqualification and the administrative judge appointed the successor. *Ferry* was therefore not violated.

The neighbor argues that the administrative judge was required by OCGA § 15-5-5 (2) (Code Ann. § 24-3306a) to appoint a superior court judge "within the district" to serve. OCGA § 15-5-5 (Code Ann. § 24-3306a) provides in pertinent part as follows: "The duties and authority of each district administrative judge shall be as follows: ... (2) To authorize and assign any superior court judge within the

"unsightly or otherwise in disharmony with existing land uses," as well as the committee's consideration of "any other criteria deemed relevant," are so vague and bereft of objective criteria as to be patently unreasonable and, therefore, unenforceable. See *Levendis v. Cobb County,* 242 Ga. 592 (250 SE2d 460) (1978); *Arnold v. State,* 236 Ga. 534 (224 SE2d 386) (1976).

district to sit on any type of case or to handle other administrative or judicial matters within the district; provided, however, that the assignment shall be made with the consent of the assigned judge and with the consent of the majority of the judges of the circuit to which the assignment is made and that the assignment shall be made subject to rules promulgated by the district council by a majority vote of the superior court judges within the district." This provision constitutes a grant of authority to the administrative judge over active superior court judges within the district. Except as to the requirement of consent, etc., it is not a limitation on the authority of the administrative judge. This provision does not prevent an administrative judge from procuring the services of a senior judge from outside the administrative district, because superior court judges, including senior judges, have jurisdiction to act in any circuit other than their own when the resident judge is disqualified. OCGA § 15-6-12 (Code Ann. § 24-2617). Senior superior court judges are not ineligible to serve in place of a disqualified judge simply because, under *Ferry,* supra, the disqualified judge is not to request the service of a designated senior judge as otherwise provided in OCGA § 47-8-64 (a) (Code Ann. § 24-2605a.2 et seq.) We find no error in this enumeration.

The neighbor assigns as error the denial of his motion to intervene. See OCGA § 9-11-24 (Code Ann. § 81A-124). He complains that the operation of the quarry will violate various laws (not involved here) and will constitute a nuisance, and that no permit should have been issued by the Department of Natural Resources. Regarding intervention as a matter of right, it is doubtful that the disposition of this mandamus action will impair or impede the neighbor's ability to protect the interests he seeks to assert. In any event, the neighbor has not shown that his interests, to the extent they are involved in this litigation, are not being adequately represented by the defendants. *DeKalb County v. Post Properties,* 245 Ga. 214, 219 (263 SE2d 905) (1980). Regarding permissive intervention, this is a matter which addresses itself to the discretion of the trial court, OCGA § 9-11-24 (b) (Code Ann. § 81A-124), and no abuse of that discretion has been shown here. *Allgood v. Georgia Marble Co.,* 239 Ga. 858 (239 SE2d 31) (1977). As was noted in *Allgood,* where the county denied a permit necessary to authorize quarrying operations and where, as here, the trial court ordered that the permit be issued, the neighbors are not bound by that decision and are free to pursue other remedies for any legal wrong inflicted upon them. *Allgood,* supra, 239 Ga. at 859-860.

For the reasons stated in Division 1 of this opinion, the grant of summary judgment in favor of plaintiffs is affirmed. The denial of

intervention is likewise affirmed.

*Judgment affirmed. All the Justices concur.*

Decided March 14, 1984 —
Rehearing denied April 5, 1984.

*Wall & Noonan, Alford Wall, Vanderhoff & Jordan, Lynwood D. Jordan, Jr.,* for appellants (case nos. 40369, 40370).

Edward Wright, *pro se* (case no. 40371).

*Troutman, Sanders, Lockerman & Ashmore, William G. Vance, Richard A. Newton, Norman L. Underwood, Herbert D. Shellhouse,* for appellees.

*Kilpatrick & Cody, William B. Gunter, D. Scott Stenhouse, Thomas C. Shelton,* amicus curiae.