Van J. Paulus, Plaintiff-Appellee, v. Sidney D. Smith, Acting Commissioner of Buildings of the City of Chicago, William P. Hogan, Chief Electrical Inspector of the Bureau of Electrical Inspection of the City of Chicago, Edward J. Boyle, Assistant Chief Electrical Inspector of the City of Chicago, City of Chicago, a Municipal Corporation, Rite-Lite Neon Sign Co., an Illinois Corporation, and George Aloisio, Defendants, Sidney D. Smith, William P. Hogan, Edward J. Boyle and City of Chicago, a Municipal Corporation, Certain Defendants-Appellants.

Gen. No. 50,008.

First District, First Division.

April 25, 1966.

Raymond F. Simon, Corporation Counsel, of Chicago (Sydney R. Drebin, Richard J. Elrod and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellants.

Raymond I. Suekoff, of Chicago (Stuart C. Katz, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

The defendants, City of Chicago and its employees, appeal from a permanent injunction which restrains defendants from (1) revoking a sign permit issued to plaintiff, and (2) from interfering with or preventing plaintiff from proceeding with the completion of the sign erected under the permit. The trial court found the suit to be "an appropriate case for the application of the doctrine of equitable estoppel."

The Municipal Ordinances of the City of Chicago involved in this appeal are section 86.1–15.1 of the Illuminated Signs and Signboards Ordinance and section 10.14

(4) of Chapter 194A of the Zoning Ordinances as they were in effect in June of 1963. The two sections were identical and then read as follows:

"86.1–15.1. No advertising sign shall be permitted within 400 feet of specified public parks, or the main roadway (exclusive of access drives), of a specified major route if the face thereof is visible therefrom, and advertising signs located at a greater distance than 400 feet from such public park or the main roadway (exclusive of access drives) of such major route and visible therefrom shall not exceed in gross area in square feet $\frac{1}{200}$ times the square of the distance of such advertising sign from said park, or main roadway of said major route.

"The designated 400 feet shall be measured from the center lines of the streets bounding public parks or the boundary lines of such public parks, whichever applies. As it applies to major routes, the measurement shall be taken from the center lines of such routes. For the purposes of this section . . . major routes shall include the following:

"...

"(b) All expressways . . . ."

Plaintiff, Van J. Paulus, is in the outdoor advertising business. He acquires sites, erects signs and rents them to advertisers.

On June 4, 1963, plaintiff submitted to the Department of Buildings of Chicago two applications for permits for the construction of an advertising sign to be located on property owned by the Chicago, Milwaukee & St. Paul Railroad Company. The first application was for a "Signboard Permit"; the second was for an "Electric Sign" permit. The "Signboard" application stated that the location of the signboard would be 4809–4811 W. Wilson; that plaintiff was the owner; that the area of the signboard

would be "H. 20 L. 60 Height above ground 80," and that the signboard would be illuminated; and that drawings were attached. The application date was left blank, and under "Remarks" the words "Railroad Property" were written. The application was certified by plaintiff as owner and by Rite-Lite Neon Sign Co. by George S. Aloisio as sign erector. It contains the following certification above the signatures: "The undersigned certify that the statements in this application are true and correct and that all work done under the proposed permit will conform to the requirements of the Chicago Municipal Code." All this appeared on the application when submitted.

The "Electric Sign" application shows the same address for the location, the same dimensions for the sign, and Rite-Lite Neon Sign Co. as the "electrical contractor" and "sign erector." George Aloisio's name also appears under the certification that the statements "are true and correct and that all work done under the proposed permit will conform to the requirements of the Chicago Municipal Code."

We note here that on July 2, 1963, plaintiff also submitted to the City two applications for permits to construct a second signboard, an electric sign, on the railroad's right-of-way. These applications were made out substantially the same as those for the first signboard and sign, and on the same day that applications were approved and permits issued. Sign No. 2 is not involved in these proceedings because no work had been commenced on it.

Although it affirmatively appears on the application for "Signboard Permit" No. 1 that drawings were attached, it was approved on June 4, 1963, without any drawings. The first drawing was for the sign support structure, and it is dated June 15, 1963. All drawings were prepared on orders from John J. Tolash, d/b/a

John's Iron Works and Welding Company. Notwithstanding the applications for sign No. 1 were signed by Rite-Lite Neon Sign Co., a registered electrical contractor and a bonded sign erector, Tolash erected the structural steel framework and placed the order for its prefabrication. The record indicates the erection of the structural steel framework was completed August 7, 1963.

Plaintiff testified that he always intended to have the sign built by Tolash, but that he did not inform anyone in the Building Department as to who was going to build the structure. He asked Tolash to sign the application, and "Tolash said he wasn't bonded or insured . . . . I was not trying to conceal from the City who was actually going to build this sign structure."

On August 17, 1963, the Chicago Sign Erecting Company, Inc., a licensed sign contractor, applied facings consisting of thick plywood prepainted sections to the framework. On August 20, 1963, City Inspector O'Donnell reported to Assistant Chief Electrical Inspector Boyle that the plaintiff's sign (No. 1) had been erected in violation of the Chicago Zoning Ordinance. Boyle commenced an inquiry and requested a report from the Zoning Bureau. This report was submitted on the same day and concluded that the sign did violate the ordinance in that "the sign was less than the required 400 feet from an expressway." After further investigation and on August 21, 1963, Boyle telephoned Rite-Lite Neon Sign Co. and spoke to Aloisio. "I told him that the electrical permits were going to be cancelled. He said that his firm was not going to do the electrical work and he did not know who was going to do it. He further said that they had not installed the structure and he did not know who had installed it. He stated that he had applied for the permits as an accommodation for the plaintiff. All he knew about the plaintiff, he said, was the plaintiff was in advertising. He sounded a bit perturbed or disgusted over the phone. He

said he wished he had not taken the permit out, that it was an accommodation permit."

After several conferences with Acting Commissioner Smith, Boyle was directed by Smith to cancel the permits. "I then wrote a letter of cancellation to Mr. Aloisio [dated August 21, 1963] and sent a copy of it to the plaintiff. I included all permits in the revocation [signs Nos. 1 and 2]." The letter of cancellation included: "The Rite-Lite Neon Sign Company is hereby directed to remove the signboard structure erected on the premises of 4809–11 W. Wilson Avenue, within ten days. Failure on the part of the Rite-Lite Neon Sign Company to comply with this directive shall result in the necessary action being instituted to enforce compliance." On August 31, 1963, at the City's direction and without instruction or permission of the plaintiff, Paulus, Rite-Lite removed the facings from the plaintiff's sign.

Plaintiff commenced the instant suit on September 5, 1963, seeking a permanent injunction and $30,000 damages. Hearings before a master commenced on September 16, 1963. On September 15, 1963, Boyle with two inspectors and a photographer made more measurements of the visibility of plaintiff's signboard from the Northwest Expressway. The measurements indicated that the sign was visible within 400 feet of the Northwest Expressway, and that it violated City ordinances.

Pursuant to stipulation, the parties and the master visited the sign site on September 20, 1963, and on Sunday, September 22, 1963, two licensed and registered land surveyors employed by the plaintiff and defendants made separate measurements of the sign in relation to the expressways and took photographs to establish the visibility of the sign from the respective expressways. The surveys were made by Gremley & Biedermann on behalf of the plaintiff and Ralph H. Burke, Inc., on behalf of the de-

104

fendants. Graphic reports prepared by both surveyors, in evidence, are in substantial agreement.

Both surveys were taken from several points along the expressway. A photograph taken at Point 2 from the center of the northwest-bound lanes of the Northwest Expressway shows that plaintiff's sign is partially visible from that point. The distance of Point 2 from the sign, as computed by the respective surveyors from their observations, is as follows:

Plaintiff's Exhibit 18 (Gremley & Biedermann).

Line of sight distance.................386.10 feet.
Horizontal distance ..................375.43 feet.

Defendant's Exhibit 11 (Ralph H. Burke, Inc.)

Line of sight distance ................391.12 feet.
Horizontal distance ..................375.44 feet.

These are the measurements upon which the City bases its right to revoke the permits as violative of the Municipal Ordinances of Chicago.

After extended hearings, the master made findings in favor of the defendants, but also found that no fraud or deception had been proven against the plaintiff in obtaining the permits. The master recommended a decree for the defendants and against plaintiff. During the hearings before the master, the plaintiff waived his prayer for damages and limited his prayer to the injunctive relief. Therefore, damages are not involved in this appeal, and our determination of the issues here is not dispositive of that question.

In a decree entered June 10, 1964, the trial court disapproved the master's findings and conclusions, overruled the City's exceptions to the report, and sustained plaintiff's exceptions. The court found that the permits

issued by the City for both signs were validly issued; that the plaintiff practiced no fraud or deception in obtaining the permits; that the plaintiff had made large expenditures in reliance on the permits; that this is an appropriate case for the application of the doctrine of equitable estoppel and the City and its officers and agents are estopped from revoking said permits or interfering with the construction of the signboards and electric signs in conformity with said permits; and that the issues were with the plaintiff.

The trial court ordered that a permanent injunction issue against all defendants, restraining them (a) from interfering with or preventing the plaintiff from proceeding with the completion of the signs; and (b) from revoking the said permits or any of them for the erection of the signs at 4809–11 W. Wilson Avenue, Chicago. The court further ordered that the master's fees of $5,062.10 "shall be paid by the defendant, City of Chicago, and that all other costs be taxed against said defendant." Subsequently, on August 7, 1964, by agreement of the parties, the decree was amended "nunc pro tunc as of June 10, 1964," and it was ordered that the master's fees "shall be paid by the plaintiff, Van J. Paulus, and no other costs shall be taxed against any party, all other costs having been heretofore paid." It was further ordered that the plaintiff construct sign No. 2 "in such a manner that the face of said sign shall never be visible from any point on the Kennedy Expressway (formerly the Northwest Expressway)."

On appeal, it is the theory of the City that the decree should be reversed because (1) the building permits obtained by the plaintiff from the Acting Commissioner of Buildings were obtained through the fraudulent inducement of the plaintiff; (2) permits S 6221 and S 229933 [sign No. 1] issued by the Acting Commissioner of Buildings purport to authorize the construction of signs which

violate the requirements of the ordinances of the City of Chicago; (3) the Commissioner of Buildings had no authority to issue permits for the construction of signboards or electric signs in violation of said city ordinances; (4) all of the permits issued by the Commissioner of Buildings expressly required the plaintiff to construct signboards and signs pursuant to the provisions of the said city ordinances, and that plaintiff did not construct the signboard or signs in conformity with said ordinances but, on the contrary, constructed the same in violation of said ordinances and contrary to the express limitations of the permits; (5) the Acting Commissioner of Buildings, through his Assistant Chief Electrical Inspector, properly revoked the said permits, for the failure of the plaintiff to construct the said signboard and electric sign in conformity with the said city ordinances and the terms of the said permits; (6) the plaintiff had personal knowledge of the provisions of the city ordinances regulating the distance and size of advertising signs in respect to their distance from Northwest Expressway and Edens Expressway; that, therefore, no estoppel exists to prevent the City of Chicago from enforcing the provisions of its ordinances with respect to the plaintiff's violations thereof; (7) the plaintiff, in constructing the signboard and sign in violation of the city ordinances, did not rely upon any misrepresentations, concealments or inducements of the City, but relied upon the illegally issued permits to violate the ordinances; (8) the plaintiff, as a violator of the city ordinances and the regulations which he seeks to avoid, has not come into equity with clean hands; (9) the ordinances which regulate the size and distance of advertising signs with respect to Northwest and Edens Expressway have been enacted to promote the safety and welfare of the general public using those expressways for traveling purposes and should be enforced; (10) the

complaint does not contain allegations to support that portion of the trial court's judgment holding the City is estopped to revoke the sign permits or to interfere with the plaintiff's construction or operation of the advertising signs which he erected in violation of the City's ordinances; and (11) the plaintiff has no property right in the use of the expressways for advertising purposes.

Plaintiff's theory is that the permanent injunction should be affirmed because (1) the plaintiff practiced no fraud or deception in obtaining the permits; (2) the master found that no fraud or deception had been proven against the plaintiff and this finding was expressly affirmed by the trial court decree; (3) the sign is not visible from the center line of any expressway within the distances proscribed by the ordinances; (4) the plaintiff, in reliance upon the permits, constructed the sign, obligated himself on a lease and other contracts, and expended substantially in excess of $20,000; (5) the City is equitably estopped from revoking the permits; (6) the City in this case attempted to invoke a section of the ordinances which it has never before enforced and to interpret all of the ordinances in a manner inconsistent with its interpretations as to all other signs; (7) the City arbitrarily attempted to revoke the permits without notice and failed to give the plaintiff an opportunity to correct any alleged violations as required by the ordinances; (8) the agreed amending order rendered the decree a consent decree and consequently not appealable; and (9) the failure of the City to obtain a supersedeas and the consequent completion of the sign pursuant to the decree made the questions raised on this appeal moot.

██ ██ After considering the merits of the various contentions of both sides, we agree with the City that the regulation of billboards and their restriction is not so much a regulation of private property as it is a regulation of the use of streets and other public thorough-

fares and within the police power of the State, and the instant ordinance which prohibits advertising signs within 400 feet of an expressway is a proper use of its police power. See Ghaster Properties, Inc. v. Preston, 176 Ohio 425, 200 NE2d 328; City of Chicago v. Vokes, 28 Ill2d 475, 479, 193 NE2d 40 (1963).

 Initially, we consider whether this is a case for the application of the doctrine of equitable estoppel against the City. The doctrine is discussed at length in Cities Service Oil Co. v. City of DesPlaines, 21 Ill2d 157, 171 NE2d 605 (1961), a building ordinance case involving the revocation of a gasoline station permit because it violated an ordinance prohibiting the location of a gasoline station within 300 feet of any school, hospital, church or theater. After three weeks of construction, the police stopped the work and the mayor revoked the permit, stating ordinance violation as the reason. The plaintiff had expended approximately $6,500 for work and restoration of the property. The court said (p 160):

> "The general rule is that a city cannot be estopped by an act of its agent beyond the authority conferred upon him. (Rippinger v. Niederst, 317 Ill 264; Burton Co. v. City of Chicago, 236 Ill 383; Hibbard, Spencer, Bartlett & Co. v. City of Chicago, 173 Ill 91.) It has been stated that anyone dealing with a governmental body takes the risk of having accurately ascertained that he who purports to act for it stays within the bounds of his authority, and that this is so even though the agent himself may have been unaware of the limitations on his authority. (Federal Crop Ins. Corp. v. Merrill, 332 US 380, 384, 92 L Ed 10, 15.) In matters involving strictly public rights the courts do not interpose to hold the municipality estopped except under special circumstances which would make it highly inequitable

109

or oppressive to enforce such public rights. Melin v. Community Consolidated School Dist., 312 Ill 376.

"The general rule is qualified, however, to enable a party to invoke the doctrine where his action was induced by the conduct of municipal officers, and where in the absence of such relief he would suffer a substantial loss and the municipality would be permitted to stultify itself by retracting what its agents had done."

■■ In further discussion of when the general rule may be qualified, the court said (p 163) :

"Defendants invoke the rule that every person is presumed to know the extent of a municipal officer's power; and they argue that unless the citizen is held to the responsibility of informing himself as to the existence of ordinances he would be 'rewarded for remaining ignorant.' There is no doubt that if one is aware of the applicable ordinance, or makes no attempt to know of it, the issuance of a permit contrary thereto does not create an estoppel against the city to forbid any further work on the building. (Sinclair Refining Co. v. City of Chicago, 246 Ill App 152.) It is also true that even in the absence of such knowledge, the mere issuance of an unauthorized permit and reliance thereon to one's injury does not provide grounds for relief."

■■ Considering the facts of the instant case, we believe the general rule that a City cannot be estopped by an act of its agent beyond the authority conferred upon him should be applied here. Even if the permits for sign No. 1 were issued without fraud or deception on the part of plaintiff, we believe the regulation of billboards and their restriction on public highways is intended for the protection of the public traveling upon highways, and to promote safe driving and eliminate

traffic hazards. Under such circumstances, where the hazard to be corrected is a continuing one affecting public safety and general welfare, we believe the doctrine of equitable estoppel should not be applied against a governing body, even though the situation sought to be corrected came about through the acts of an agent of the City, who exceeded his authority and failed to perform his duties in the exact manner prescribed by the ordinance.

Remarks made in Sinclair Refining Co. v. City of Chicago, 246 Ill App 152 (1927), are pertinent here (p 162) :

> "To hold that merely the acts of an employee could be the basis for such an estoppel as is claimed in the instant case, would be going in the direction of suspending and repealing ordinances without any action on the part of the city council; in other words, making acts of the employees or agents, though beyond the scope of their authority, and known by the parties to be such, the equivalent of legislation."

We hold the doctrine of equitable estoppel should not be applied here.

The determinative issue here is whether the instant sign actually violates the foregoing cited City ordinance. This requires the interpretation of the language of the ordinance. On the question of the language of the ordinance, plaintiff argues that there are three ordinance terms in issue which require the use of their "common dictionary meaning." (Conlon-Moore Corp. v. Cummins, 28 Ill App2d 368, 171 NE2d 676 (1960).) These three terms are "visible," "expressways," and "center lines of such routes."

██ ██ As to "visible," plaintiff contends "it must be the line of sight measurement." We agree. It is obvious that the distraction or confusion of a motorist by billboard advertising must be visual. As to "expressway,"

111

we do not disagree with plaintiff's definition as defined by Webster's Third New International Dictionary (Unabridged 1961) as "a high speed divided highway for through traffic . . . ," and that it connotes a highway with divided lanes for vehicles traveling in opposite directions.

As to what is intended by "center lines of such routes," plaintiff argues that the center line of an expressway should mean the center line of the median strip between the two north and south lanes, and that "the face of the sign is not visible from within 400 feet of the center line of either Kennedy or Edens Expressways."

The City argues that the advertising sign erected by the plaintiff (sign No. 1) is visible "from Point 2 in the center of the northbound main roadway of Northwest Expressway, 375.43 feet horizontally from the sign site and 386.10 feet on line of sight," and this is in violation of section 86.1–15.1 of the Municipal Code.

 We do not agree that the "median strip" visibility measurement should be used. Median strips in expressways are of various widths and are not intended for use of moving vehicles—hence a visibility measurement from a median strip would be meaningless here. If the ordinance is intended to protect a moving motorist, we believe the "center line" measurement should be a visibility measurement to be taken from an expressway lane approaching a sign. In fact, we think a visibility measurement of this nature should include the center line of *any* approaching lane. In construing a statute or ordinance, it is proper to consider the motive for making the ordinance and the evil sought to be corrected. (Anderson v. City of Park Ridge, 396 Ill 235, 244, 72 NE2d 210 (1947).) We note here from a careful scrutiny of the exhibits that many of the measurements made do not conform to the foregoing "center line" standards.

■ ■ We find no merit in plaintiff's contentions that the "completion of the sign rendered this appeal moot," or that "no appeal may be maintained from a consent decree." The completion of sign No. 1 after the entry of the decree and during the pendency of this appeal could not terminate and render ineffective and useless the police power of the City and its duty to protect the public from traffic hazards. As to the contention of a consent decree, we have examined the order incident to the modification of the decree and find nothing which indicates a waiver by the City of its right to appeal from the other portions of the decree. This contention is the subject of a motion to dismiss, which was taken with this appeal, and we now deny the motion.

We conclude that the City of Chicago and its officers and agents were not estopped from revoking the permits for or interfering with the construction of signboard No. 1, if it violated the City ordinance.

■ Although, for the disposition of the issues on appeal, we have accepted measurements suggested by the City, we think this record does not present sufficient measurement data upon which to decide the question of whether the sign actually violates the statute under the construction here adopted. Moreover, plaintiff contends that "the City arbitrarily attempted to revoke the permits without notice and failed to give the plaintiff an opportunity to correct any alleged violations as required by the ordinances." Therefore, considering the substantial expenditures of plaintiff made under the circumstances portrayed here, we think it equitable that visibility measurements should be made in accordance with the views expressed in this opinion and properly submitted as evidence to the trial court. If it is then determined that the sign now violates the ordinance, plaintiff should be given a reasonable opportunity to correct the violation.

For the reasons given, the permanent injunction order is reversed and the cause is remanded to the trial court to proceed in accordance with the views expressed herein.

Reversed and remanded.

KLUCZYNSKI, P. J. and BURMAN, J., concur.