37740. COBB COUNTY v. PEAVY.

SMITH, Justice.

In April, 1979, appellee leased a residence and one-half acre site located in an R-20 (residential, single family) zoning district. Shortly thereafter, she filed an application for a land use permit to use the property as a child care center. The county commissioners rejected the application and, in August, 1979, sought an injunction to prevent appellee from using the property as a day care center. A consent order was signed wherein appellee agreed that she "[would] not violate zoning regulations by operating a day care center . . . until and unless such use is permitted under applicable law." The order provided that under applicable zoning ordinances, appellee was permitted to "care for up to five (5) children on the premises."[1]

In early 1980, appellee filed two applications to have the property rezoned to a classification which would allow operation of a

---

[1] Under the Cobb County zoning ordinance, a "home occupation" use is permitted within residentially zoned property "as a secondary use . . . clearly incidental to the use . . . for residential purposes." Thus, day care is permissible as a home occupation. However, numerous restrictions apply, including that "group . . . activity shall be limited to five persons." The ordinance specifically prohibits day care operations for six or more children within a residential area. In addition, other special requirements must be met by the day care facility such as off-street loading and unloading, not less than 30 square feet of indoor play area per child, and not less than 100 square feet of fenced outdoor play area per child.

day care center. These applications were also rejected.

After further study of the zoning ordinances, appellee discovered that she could operate a private "elementary school" within the residential property classification. Under the applicable ordinance, an elementary school was defined as "grades one to seven, inclusive; provided, however, that a kindergarten and day-care center shall be allowed when operated in conjunction with and as an integral part of an elementary school, which shall include no less than grades one through three." Appellee applied for and, upon payment of $50, received a business license to operate a private school known as "Pine Needles Academy."[2] She testified that, after obtaining the license, she "no longer worried about the fact that [under the consent order she] could only have five [children on her property] at one time," and began promoting the "Pioneer Summer Day School" of Pine Needles Academy. Appellee apparently made some expenditures at this time — $50 to $60 for brochures and $68 for a sign.

Shortly after appellee's "private school-day care" operation began in earnest, her neighbors complained to county authorities. On July 2, 1980, the county commissioners amended the zoning provisions relative to elementary schools. The amended ordinance allows day-care operations in residential areas as an integral part of an elementary school which includes grades one through six. In addition, school sites are to contain at least five acres, have a frontage of 100 feet on a public street, and "site and development plans for . . . schools shall be approved by the Zoning Administrator. . . ." Appellee submitted a site plan for Pine Needles Academy, but the county rejected it on the ground that it did not establish compliance with the new zoning ordinance.

Nonetheless, appellee continued to operate her "private school-day care" facility. She testified that, during the summer, she had a maximum of fifteen pupils enrolled. Some of these children were in the elementary grades and were taking remedial instruction or preparatory instruction for the following school year. In September, all of these children returned to public school. Appellee continued to care for three elementary school children *after school,* as well as children too young to attend first grade.

In October 1980, appellant brought the present action to enjoin

---

[2] In Cobb County, business licenses are issued by the Department of Revenue Collections. At the time of appellee's license application, this department did not forward applications to the zoning department to determine whether the business operation complied with zoning regulations.

appellee's operation of her day care center. Appellee admitted operating a "private school," but maintained that she had acquired a vested right to do so under the zoning ordinance in effect prior to July 2, 1980. The trial judge agreed, finding that appellee's purchase of the business license, as well as other expenditures made in reliance upon the pre-July 2, 1980 ordinance, gave her a vested right to operate a private school on her property. The trial judge also ruled that appellant had applied the new zoning ordinance in an unreasonable and discriminatory manner.

1. The basic issue presented by appellant's first enumeration of error is whether appellee had acquired a vested right under the prior ordinance to operate her facility. We must determine the rights she acquired, if any, by virtue of a) the procurement of a business license and, b) the expenditures made to put the facility into operation.

a) This court has held that a county's issuance of a building *permit,* or a "substantial change in position by expenditures in reliance upon the probability of the issuance of a building permit" (*Barker v. County of Forsyth,* 248 Ga. 73, 76 (281 SE2d 549) (1981)), will create a vested right in the existing zoning ordinances. A building permit, however, is "an official certificate that a proposed structure and use, evidenced by the application and the plans and specifications filed therewith, are in conformity with the zoning regulations and other applicable ordinances as they exist and are in force at the time the permit is issued. . . ." 3 Rathkopf, The Law of Zoning and Planning, p. 57-2.

In contrast, a business license is typically not a device for ensuring compliance with zoning ordinances. "Although the general aim of both zoning and licensing regulations is the promotion of the general welfare, each is independent of the other and seeks to accomplish its purpose by a different means. The fact that a zoning ordinance permits a use in a particular district does not authorize the use there without a license. On the other hand, a license or permit does not authorize a use in violation of zoning laws. In other words, a license or permit does not relieve one from complying with a zoning ordinance, and this generally is true of a state license or permit." 8 McQuillin, Municipal Corporations, § 25.12.

The license appellee obtained from the Cobb County Department of Revenue Collections was clearly not intended to serve a zoning compliance function. Accordingly, we conclude that appellee did not acquire vested rights under the prior zoning ordinance by virtue of her procurement of a business license. Cf. *Clark v. International Horizons,* 243 Ga. 63 (252 SE2d 488) (1979).

b) As we noted above, the trial court also found that appellee had "expended considerable time, effort and money in her

development of a private school in reliance upon the pre-July 2, 1980, zoning ordinance . . ." and therefore had a vested right in continuing her "private-school-day care" operation. We cannot agree.

It is undisputed that appellee spent very modest sums of money on her new endeavor — $50 for a business license, $50 to $60 for fliers advertising her *summer* school, $68 for a sign advertising her *summer* school and $160 for books, which apparently were used in the *summer* school. The house appellee leased from relatives to operate her facility served as her residence, and no modifications were made to the dwelling. Cf. *Clairmont Dev. Co. v. Morgan,* 222 Ga. 255 (149 SE2d 489) (1966).

Moreover, the expenditures that were in fact made by appellee do not show an unequivocal commitment toward establishing an elementary school, grades 1 through 3. Whatever her long-term intentions, appellee has only succeeded in putting together a summer school program consisting of remedial instruction, physical education, and "voluntary enrichment" courses. Almost to a dollar, appellee's commitment to Pine Needles can be explained on this basis.

We must conclude that appellee's efforts were insufficient as a matter of law to establish a vested right to operate an elementary school-day care center under the pre-July 2 ordinance. "[M]ere preliminary work not of a substantial nature does not constitute a nonconforming use; neither does a use which is merely contemplated for the future but unrealized as of the effective date of the regulation." *Rainwater v. Coweta County Bd. of Zoning Appeals,* 123 Ga. App. 467, 468 (181 SE2d 540) (1971). Accord, Tosh v. California Coastal Comm., 99 Cal. App. 3d 388 (160 Cal. Rptr. 170) (1979); City of Lake Geneva v. Smuda, 75 Wis2d 532 (249 NW2d 783) (1977); 82 AmJur2d, Zoning and Planning, § 186.

2. In its second enumeration of error, appellant challenges the trial court's ruling that "the County acted unreasonably and discriminatorily in its enforcement of the July 2, 1980, amendment against Peavy." This ruling was based on two independent findings: 1) that another private school, with only grades one and two, was operating in the county, and no attempt had been made to enjoin its operation, and 2) that the July amendment was created with the "knowledge and intention that Peavy's property would not be able to fulfill the new requirements."

We agree with the trial court that "zoning ordinances must not only be non-discriminatory and reasonable but must also be applied in a non-discriminatory and reasonable manner in order to be enforceable. *Tuggle v. Manning,* 224 Ga. 29 (159 SE2d 703) (1968); *City of Rome v. Shadyside Memorial Gardens,* 93 Ga. App. 759 (92

SE2d 734) (1956). However, whether an ordinance is uniformly enforced by the authorities is a question of fact." *Matthews v. Fayette County,* 233 Ga. 220, 226 (210 SE2d 758) (1974). In our view, the evidence does not support the trial court's finding that the County was acting unreasonably and discriminatorily.

The evidence arguably supportive of the trial court's ruling consists of the following: 1) appellee's testimony that another school, with only a kindergarten and grades 1 and 2, was operating in the county; 2) the testimony of the Director of the Cobb County Zoning Department that he knew of the other school, but had no personal knowledge of any zoning violations by the school and had not set up an investigation to find out whether the school had "fully-implemented grades 1 through 2," and 3) the testimony of one of appellee's neighbors that, prior to the July 2 amendments, a group of residents had complained to a zoning official about appellee's use of the property and that this official indicated to the residents that "one way to take care of" the problem was to amend the zoning ordinance.

"This is insufficient to prove a denial of equal protection of the law." Id. Because a county zoning department cannot reasonably be expected to be aware of all possible zoning violations within the jurisdiction, the mere existence of a similar improper use does not establish discriminatory enforcement. "The record here shows no evidence of fraud or corruption." *Lancaster v. Allen,* 242 Ga. 5, 6 (247 SE2d 746) (1978).

Furthermore, the fact that some zoning officials may have been aware that the existing ordinance could be amended and that appellee could not meet the requirements of a stricter ordinance does not mean that she had been "singled out" by the zoning authorities. As the zoning administrator explained: "[The pre-July 2 ordinance was] totally silent on any regulations as it related to a private school. [We] felt that we needed some regulations and requirements that would not only protect the surrounding community but would allow for some growth and not overcrowd one residential lot . . . The majority of . . . typical residential lots are so small they allow no room for expansion; they allow no room for set-backs; they allow no room for additional buffers or anything to protect the surrounding property owners . . ." Clearly there were legitimate reasons for amending the zoning ordinance. Appellee has offered no legitimate reason why the amendments should not be enforceable as to her.

As the evidence does not support a finding that the July 2 amendments have been applied in a discriminatory or unreasonable manner, the judgment of the trial court must be reversed. Cf. *City of Rome v. Shadyside Memorial Gardens,* supra.

*Judgment reversed. All the Justices concur, except Weltner, J.,
not participating.*

DECIDED FEBRUARY 4, 1982.

*Sams, Glover & Gentry, David P. Hartin,* for appellant.
*Awtrey & Parker, Toby B. Prodgers,* for appellee.