41767. COREY OUTDOOR ADVERTISING, INC. v. THE
BOARD OF ZONING ADJUSTMENT OF THE
CITY OF ATLANTA et al.
(327 SE2d 178)

MARSHALL, Presiding Justice.

On September 8, 1983, the appellant (Corey) was issued a sign permit from the Bureau of Buildings (BOB) of the City of Atlanta to erect a billboard at 1558 Peachtree Street. The appellant renewed its permit on March 16, 1984. On March 22, 1984, the appellant received a permit for a larger, two-faced billboard at the same location (the permit at issue) after an inspection by a BOB inspector.

On May 30, 1984, the Georgia Trust for Historic Preservation notified the BOB that the billboard was being erected within 300 feet of Rhodes Memorial Hall, a historic property listed on the National Register of Historic Places, in apparent violation of § 16-28.019 (13) of the city ordinance, to wit: "General advertising signs shall not be erected on or within 300 feet *of the boundaries* of the following properties which are located on the National Register of Historic Places if *any part* of the general advertising sign is visible therefrom; . . . Rhodes Memorial Hall." (Emphases supplied.) The BOB confirmed this by investigation, and violation notices, removal notices and stop-work orders as to the south face of the billboard were posted on the structure and given to Corey's representatives.

Corey ignored these notices, completed the advertisement on the south face of the billboard, and appealed the issuance of these orders to the Atlanta Board of Zoning Adjustment (BZA). The Georgia Trust appealed to the BZA on the ground that the permit allowing *any* sign at that location violated the ordinance. The BZA ruled that the sign, as defined as the entire structure, including both the south and north faces, was within 300 feet of a historic-property boundary

line in violation of the valid ordinance, and must be removed. Corey filed an appeal to the Superior Court of Fulton County, which appeal contained (1) a statutory appeal from the decision of the BZA; (2) an attack on the constitutionality of the underlying city zoning ordinance in question, § 16-28.019 (13); (3) a prayer for permanent injunctive relief to enjoin the BOB, the City of Atlanta and the BZA from revoking Corey's building permit; and (4) a prayer for a declaratory judgment that Corey had not violated § 16-28.019 (13) and that the building permit issued to it is valid and that Corey may rely on it to continue to use and maintain its sign on the property.

Superior court affirmed the BZA; Corey appeals; we affirm.

1. The appellant contends that the ordinance in question is unconstitutional in that it is vague, indefinite and ambiguous, therefore void and unenforceable under the federal and state Constitutions, because it fails to provide explicit standards for measuring the 300-foot distance, hence impermissibly delegates to the BOB the right on an ad hoc basis to determine the technique for measuring such distance restriction.

The clear purpose of the ordinance is to provide a zone of visual integrity around certain designated structures which the City of Atlanta has deemed to have historical significance, preventing general advertising signs from marring historical sites by distracting from the view, overshadowing the site, or lessening the impact of the site. The prohibition against any part of such signs' being visible from the site prevents the ordinance from being arbitrarily applied when natural topography, trees, buildings or structures screen out such signs from view on or within the boundaries of such historic site.

The provision, "erected on or within 300 feet of the boundaries . . . ," sets forth clearly and unambiguously that such prohibited distance is to be measured from any point on the "boundaries" (plural) of the historic site to any "part of the general advertising sign" which "is visible therefrom." This puts the world on notice that, within a 300-foot zone perimeter surrounding a historic site, no general advertising sign is permitted if visible from the historic-site boundaries. While other zoning ordinances do provide for measurement between signs point-to-point along the abutting right-of-way, the purpose of these ordinances is to limit the distance *between* billboards, reducing visual clutter and distractions along the city streets. To follow the construction urged by the appellant of a point-to-point measurement along the abutting right-of-way (which in this case would exceed the 300 feet) would defeat the valid public purpose of restricting or minimizing visual blight surrounding a historic site, because the entire site is visually important, and not just the front. Even statutes in pari materia may not be resorted to where the language of the statute under consideration is clear. *Ryan v. Commrs. of Chatham County,*

203 Ga. 730, 732 (48 SE2d 86) (1948). As the ordinances requiring measurement of distance along the curb specifically provide for such a method of measurement, had the City Council intended for this method to be used in the ordinance in question, it would have so stated in the ordinance. There is no evidence that the appellant ever had a general advertising sign permit granted involving any other listed historic site upon which it can now rely; the granting of permits to erect other general advertising signs under conditions other than a historic site is entirely different and unrelated.

The trial court did not err in holding that no state or federal equal-protection or due-process rights of the appellant have been violated and that the ordinance in question is not overly broad or overly restrictive, and is reasonable, clear and unambiguous.

2. The appellant argues that the "signs" which are prohibited under the ordinance should be interpreted to mean "sign copy" only, rather than the entire structure of a billboard, as here.

Section 16-28.019 (13) specifies that "if any part of the general advertising sign is visible . . . ," and it does not say "sign face" or "sign copy." In § 16-28.017 of the ordinance, "signs" are defined as "Any name, identification, description, display, illustration or device *which is affixed to* or represented directly or indirectly upon *a building, structure or land* in view of the general public and which directs attention to a product, place, activity, person, institution or business." (Emphases supplied.) The language "affixed to . . . a building, structure or land" is used to distinguish between self-supporting billboards, and signs affixed to previously standing structures or buildings which have a separate and distinct use.

This interpretation is also supported by the numerous ordinance references to "sign copy" when referring to the face or advertising portion of the "signs." For example, § 16-28.019 states: "No permit shall be required for the substitution of *panels* or *faces* where the customary use of the *signs* involve frequent and periodic changes of *copy*." (Emphases supplied.) Reading the sign ordinance as a whole, as is proper (see generally *Scott v. State*, 6 Ga. App. 332 (64 SE 1005) (1909)), it is clear that the BZA and trial-court interpretation of "sign," as encompassing the entire free-standing structure, is the required interpretation when taken in the context of the sign ordinance, and also as a matter of common sense. To construe "sign" to mean only "sign face" would defeat the clear intent and purpose of the ordinance, and would permit billboards to be erected on or adjacent to all boundaries of a historic site, provided the sign was angled or positioned so that the "sign face" could not be seen from the boundary.

3. The theory of estoppel against a municipal corporation may be applied, and is recognized by Georgia courts. See *Kiker v. City of Riverdale*, 223 Ga. 142 (154 SE2d 17) (1967); *City of Calhoun v. Hol-*

*land,* 222 Ga. 817, 819 (152 SE2d 752) (1966). "A municipal corporation may be estopped, as right and justice may require, where the act or contract relied on to create the estoppel was within the charter powers of the corporation, although the method of exercising the power was irregular." *City of Summerville v. Ga. Power Co.,* 205 Ga. 843 (2) (55 SE2d 540) (1949).

However, in each such instance, it was the governing body, i.e., city council, rather than a mere employee carrying out a ministerial function, which knowingly chose or did such act which it tried to undo. Even the governing authority could not be estopped regarding an *ultra vires* act. *City of Calhoun v. Holland,* supra, p. 819. "Powers of all public officers are defined by law and all persons must take notice thereof. The public may not be estopped by the acts of any officer done in the exercise of an unconferred power." OCGA § 45-6-5; *City of Atlanta v. Bull,* 161 Ga. App. 648 (288 SE2d 335) (1982), applying this rule to city officials; *City of Columbus v. Richardson,* 155 Ga. App. 573 (271 SE2d 706) (1980); *P. C. Gailey Contractors, Inc. v. Exxon Co., U. S. A.,* 143 Ga. App. 827 (240 SE2d 208) (1977). "There is no such doctrine known to the law as a set-off of wrongs. Not even estoppel can legalize or vitalize that which the law declares unlawful and void. If so, the conduct of individuals, whether independently or collusively, could render any and all laws invalid and impotent." *Flournoy v. Highlands Hotel Co.,* 170 Ga. 467, 471 (1) (153 SE 26) (1930). The act of the official with the BOB who issued the building permit to the appellant was clearly unauthorized, because the ordinance in question prohibited the issuance of a building permit for the site in question. The ordinance grants authority to issue building permits only under such terms and conditions as are approved and authorized by the ordinance. The permit in question was not so authorized and therefore there can be no estoppel.

A second reason why equitable estoppel is inapplicable to this case is that equitable estoppel will not apply so as to frustrate or contravene a governmental function of a governmental unit. " 'Municipalities act in both a governmental and a proprietary capacity, and an estoppel is not asserted if such will embarrass a municipality in its capacity as a governing body or operate to prevent it from exercising its police power . . . ' " *City of Jefferson v. Holder,* 195 Ga. 346, 355 (24 SE2d 187) (1943). In regulating zoning, a municipality is exercising its police power. *Barrett v. Hamby,* 235 Ga. 262, 265 (219 SE2d 399) (1975). It is a governmental function for which the municipality, for instance, is not liable in negligence. OCGA § 36-33-1. Even zoning based merely on aesthetic interests is a reasonable and proper exercise of the city's police power. *Gouge v. City of Snellville,* 249 Ga. 91 (1) (287 SE2d 539) (1982). The continued existence of the appellant's billboard violates a city ordinance and interferes with the city's gov-

ernmental powers; therefore, under an equitable balancing of interests, estoppel cannot be asserted against the city. Cf. *Simmons v. City of Clarkesville*, 234 Ga. 530 (216 SE2d 826) (1975). Furthermore, the city acted immediately, upon discovering the mistake, to correct it, whereas the appellant ignored the city's stop-work orders, and instead hastened to complete construction of the billboard, including placement of the advertisement copy.

Finally, the vast majority of jurisdictions which have considered this issue have concluded that estoppel cannot be invoked against a governing authority under the type of circumstances existing here. E.g., Rathkopf, The Law of Zoning and Planning, pp. 67-2, -3, -5, -6 (1979); McQuillin, Municipal Corporations, § 25.153 (1983); *Maguire v. Reardon*, 255 U. S. 271 (41 SC 255, 65 LE 625) (1921); *Scanlon v. Faitz*, 57 Ill. App. 3d 649 (373 NE2d 614) (1978); *Paulus v. Smith*, 70 Ill. App. 2d 97 (217 NE2d 527) (1966); *Zahodiakin Engineering Corp. v. Zoning Bd. of Adjustment*, 8 N.J. 386 (86 A2d 127) (1952). The authorities cited by the appellant in opposition are distinguishable in that they do not involve illegal or ultra vires acts.

4. The remaining issue is the appellant's contention that the issuance of the building permit created constitutionally protected vested zoning rights which could not be revoked by the BZA and upon which the appellant can rely.

In *Barker v. County of Forsyth*, 248 Ga. 73, 75 (2) (281 SE2d 549) (1981), this court stated the majority rule for vested rights to be: "'A landowner will be held to have acquired a vested right to continue the construction of a building or structure and to initiate and continue a use despite a restriction contained in an ordinance where, *prior to the effective date of the ordinance*, in reliance upon a permit theretofore *validly issued*, he has, *in good faith*, made a substantial change of position in relation to the land, made substantial expenditures, or has incurred substantial obligations.' 3 Rathkopf, Law of Zoning and Planning, § 57-3; see, 49 ALR3d 13, § 3." (Emphases supplied.) This rule has been applied in cases in which the building permit has been *validly* issued. E.g., *Schulman v. Fulton County*, 249 Ga. 852 (295 SE2d 102) (1982); *City of Atlanta v. Westinghouse Electric Corp.*, 241 Ga. 560 (246 SE2d 678) (1978); *Springtime, Inc. v. Douglas County*, 228 Ga. 753 (187 SE2d 874) (1972); *Craig v. City of Lilburn*, 226 Ga. 679 (177 SE2d 75) (1970).

However, the present case does not involve the issuance of a *valid* permit, because the permit here was prohibited by a valid zoning ordinance, i.e., § 16-28.019 (13). "A permit issued for a use or structure which is forbidden by the ordinance is beyond the power of the officer to issue; consequently, it has no legal status, is invalid, and is itself entirely without power to clothe its holder with any legal rights thereunder." 56 Rathkopf, The Law of Zoning and Planning, §

1 (1964) and cit. "A permit for a use prohibited by a valid zoning ordinance, regulation, or restriction is void, of no effect, and subject to revocation. *This is true although the permit has been issued under a mistake of fact.*" (Emphasis supplied.) 8 McQuillin, Municipal Corporations, § 25.153 (3d ed., 1983). "The expenditure of even substantial sums in reliance upon a permit found to be void is generally held not to raise an estoppel against its revocation or against enforcement of the ordinance found to be violated by the use or structures maintained pursuant to the permit." Rathkopf, supra, § 56-13. In *Maguire v. Reardon*, 255 U. S. 271, supra, the Supreme Court upheld a state court's holding that a building already constructed but within a fire boundary was illegal, hence could be demolished without violating the federal Constitution.

The law in Georgia is in accord with the general rule. Several cases decided by this court show that when permits and licenses for construction have been issued, but the structure is later found to be in violation of the zoning laws, the municipality can proceed against the developer, and no vested rights attach. In *Gray v. DeKalb County*, 230 Ga. 95 (195 SE2d 914) (1973), the county brought an action enjoining a housing developer from maintaining a house which had corners 8.6 and 1.2 feet from the property line, when the ordinance required a 10-foot setback. The zoning authorities — as in the case sub judice — did not discover the zoning violation until the house was 90% complete. This court noted, at p. 96, that "[the defendant], or his builder, obviously either failed to determine where the property lines were or intentionally failed to comply with the zoning regulations." The case of *Kiker v. City of Riverdale*, 223 Ga. 142, supra, makes clear that the issuance of both a license and a building permit is not sufficient to estop a city from enjoining a use in violation of a zoning ordinance, when the city is not otherwise aware of the illegality. Even though "the building was erected and the lot enclosed with a fence at a substantial cost," the *Kiker* court rejected the appellant's argument that the issuance of the permits together with expenditures in reliance thereon estopped the city.

Similar reasoning has been used by the Georgia courts when analyzing nonconforming uses. Nonconforming uses are uses of structures which were existing prior to the enactment of an ordinance rendering them nonconforming. However, our courts have been very careful to distinguish between *legal* nonconforming uses and *illegal* nonconforming uses. For example, the court in *Troutman v. Aiken*, 213 Ga. 55 (96 SE2d 585) (1957), stated that a nonconforming use for drag races on Sundays was not legally nonconforming, because the Sunday races were illegal without a special permit, and the property owner had never secured the necessary permit. And in *Ralston Purina Co. v. Acrey*, 220 Ga. 788, 791 (142 SE2d 66) (1965), the court stated:

"Hence, even a nonconforming use would not be protected unless it appeared that it was lawful at its inception." Similarly, the court affirmed the trial court in *Tucker v. City of Atlanta*, 211 Ga. 157 (84 SE2d 362) (1954), in holding that, even though a permit for general repairs had been issued to the Tuckers, it could not be used to illegally enlarge a nonconforming use, because such construction was in violation of the zoning laws regarding nonconforming uses.

Taken together, these cases show that a permit issued for either an illegal use or an illegal nonconforming use is void; it cannot be used as an excuse to continue the use in violation of a zoning ordinance, and it does not vest constitutional rights. This rule particularly applies when the permit is issued, as in this case, because of a good-faith mistake of fact and when city officials act immediately upon the discovery of their error. Hence, the law in Georgia, like the rule in nearly all jurisdictions, supports the conclusion that a permit for an illegal use is void and vests no property rights. In summary, in order for a property right to vest, it is essential that the building permit must be "based upon a permitted use under the zoning law then in force," *Clark v. Intl. Horizons*, 243 Ga. 63, 65 (252 SE2d 488) (1979); that "a building permit has been legally obtained and is valid in every respect," *Keenan v. Acker*, 226 Ga. 896 (178 SE2d 196) (1970); and that the building permit must be "validly issued," *Barker v. County of Forsyth*, 248 Ga. 73, supra, p. 75.

The cases relied on by the appellant in no way alter this conclusion. In all of the vested-right cases cited by the appellant, the city or county officials had either changed their minds after assuring the applicant that the development was proper (see *Schulman v. Fulton County*, 249 Ga. 852, supra) or actually tried to amend the ordinances which had previously permitted the use in question (see *Barker*, supra; *Keenan v. Acker*, 226 Ga. 896, supra). None of these cases involves permits *mistakenly* issued or permits that are plainly illegal under the currently existing zoning ordinances. *Cobb County v. Peavy*, 248 Ga. 870 (286 SE2d 732) (1982), deals with the creation of vested rights upon issuance of a building permit as opposed to a business license, and finds in dicta, quoting 3 Rathkopf, The Law of Zoning and Planning, p. 57-2, that a building permit is "an official certificate that a proposed structure and use, evidenced by the application and the plans and specifications filed therewith, are in conformity with the zoning regulations and other applicable ordinances as they exist and are in force at the time the permit is issued . . . " However, the *Peavy* court relied on the *Barker* case, supra, which involved the application for and verbal expressions of approval of a building permit *based on a valid ordinance*, hence *Peavy* is not authority for the appellant's position that the issuance of a building permit *in violation of the underlying zoning ordinance* creates a vested right.

In summary and conclusion, § 16-28.019 (13) was a valid zoning ordinance in existence not only in September 1983, but also in March of 1984 when the third building permit was issued; each building permit was invalid and violated the clear and express terms and conditions of the ordinance, and the fact that a ministerial employee erroneously issued an illegal building permit upon which the appellant relied cannot vest any rights; the invalid and illegal building permit was void when issued, and could vest no property rights in the appellant with or without reliance; the appellant had notice of the clear, plain and unambiguous language of the ordinance, and knew that in nonhistoric-site cases a point-to-point measurement along the abutting right-of-way was employed by the BOB; if the appellant had any question as to the validity, meaning or correct interpretation of such ordinance, it could have requested an administrative interpretation by BOB, BZA or the city attorney prior to making a substantial expenditure based upon the permit; the appellant seeks to take advantage of the error in its favor and then argues that it has suffered substantial economic harm by relying on a void building permit, the validity of which could have been tested between September and March; from the photographs in evidence, it is clear that, because of the substantial nature of the sign and unipole, such could be moved and reused at another location, although such would result in the loss of the expenses to take it down, move it and re-erect it.

*Judgment affirmed. All the Justices concur, except Smith, J., who dissents.*

DECIDED MARCH 14, 1985 —
REHEARING DENIED MARCH 28, 1985.

*Bauer, Beitch & Raines, Henry R. Bauer, Jr.,* for appellant.
*Thomas A. Bowman, Marva Jones Brooks, Robert L. Zoeckler, Dennis M. Hall,* for appellees.