S94A0442. BANKS COUNTY et al. v. CHAMBERS OF GEORGIA, INC. et al.

(444 SE2d 783)

THOMPSON, Justice.

This case presents a question of first impression: Does an applicant for a proposed solid waste landfill have a vested right to written verification of compliance with local zoning ordinances if he is in compliance with such ordinances when he first requests written verification? We answer this question affirmatively.

Banks County operated its own landfill until the mid-1980's. At that time, the County shut down its landfill and sought out persons interested in operating a private landfill in the County. R & B Wastes, Inc. ("R & B"), a corporation owned by Richard J. Daniel, Donald R. Daniel, and Angie A. Daniel, came forward. On April 23, 1987, R & B obtained a permit from the Georgia Department of Natural Resources ("DNR") to operate a landfill on approximately 20 acres of a 64-acre tract of land belonging to the Daniels.

Thereafter, R & B proposed expanding the landfill site, or selling an expanded landfill site to Chambers of Georgia, Inc. ("Chambers"). (Chambers has an option to purchase the 64-acre tract, as well as adjacent tracts owned by the Daniels.)

Applicants for solid waste permits must submit written verification from the County that the proposed site is in compliance with local land use laws. OCGA § 12-8-24 (g); Ga. Comp. R. & Regs., r. 391-3-4-.05 (1993). Written verification of zoning compliance is one of the first hurdles a landowner must clear to obtain a sanitary landfill permit from the DNR.

On August 20, 1991, R & B, the Daniels and Chambers (hereinafter referred to collectively as "plaintiffs"), sought written verification that the proposed, expanded site complied with the County's zoning ordinances. It soon became apparent that the County was not going to give plaintiffs the written verification they sought. So, on September 26, 1991, plaintiffs filed a petition for mandamus and other relief, seeking, inter alia, an order compelling the County, members of the County Board of Commissioners, and the County's administrative zoning officer (hereinafter referred to collectively as "defendants"), to

issue written verification of zoning ordinance compliance. Later that day, the County adopted a "Restated Zoning Ordinance."

Plaintiffs' mandamus action was presented for trial upon stipulated facts. On June 29, 1993, following a hearing, the superior court determined that the County failed to enact a valid land use ordinance prior to August 20, 1991, which would preclude written verification of compliance. The court concluded that plaintiffs were entitled to a written verification letter and it ordered defendants to issue such a letter. Significantly, the court made no finding as to whether the zoning ordinance enacted by the County on September 26, 1991, barred issuance of a written verification letter.

The County's administrative zoning officer issued a written verification letter, on July 9, 1993, to the Environmental Protection Division of the Georgia Department of Natural Resources. It reads:

> In accordance with the order [in the superior court case], it is hereby certified that as of August 20, 1991, when the plaintiffs in said actions applied for a certificate of zoning compliance, the plaintiffs' intended use was not contradictory to any county zoning or other land use regulations or ordinances . . . . [N]o certification is made as to the effect of the current Banks County Zoning Ordinance which was enacted on September 26, 1991.

Plaintiffs were dissatisfied with the verification letter and moved to have defendants found in contempt. Alternatively, they sought an amendment to the court's June 29, 1993, order to require defendants to verify that the plaintiffs' proposed landfill is not in violation of current zoning ordinances.

The superior court ruled that plaintiffs acquired a "vested right" to a letter of compliance on the date they sought written verification from the County. Thus, the court determined that the September 26, 1991, zoning ordinance could not bar plaintiffs from obtaining written verification of zoning compliance. Again, the court commanded defendants to verify that plaintiffs' proposed, expanded landfill complied with the County's zoning ordinances.

The court directed the entry of judgment pursuant to OCGA § 9-11-54 (b). Defendants appeal; we affirm.

1. In *Gifford-Hill &c. v. Harrison*, 229 Ga. 260 (191 SE2d 85) (1972), this court considered whether a landowner had a right to the issuance of a building permit in accordance with a zoning ordinance which was in existence when the landowner first applied for the building permit. This court held that the landowner had such a right:

> In this State when land is zoned for a particular use, and an

applicant properly applies for authorization to use the land for that particular use, he is entitled to have such authorization issued; an applicant must thereafter comply with all reasonable conditions and requirements imposed upon the use of the land, and if he fails to do so the governing authority can withhold building permits and occupancy permits to enforce compliance with these regulations and conditions subsequent; but a governing authority cannot deny or postpone requested authorization to use the land for a permitted use and then defeat the applicant's right by thereafter rezoning the land.

Id. at 265-266. Accord *WMM Properties v. Cobb County*, 255 Ga. 436 (339 SE2d 252) (1986) (landowner has vested right to use property in accordance with zoning regulations in force when he applied for building permit).

Plaintiffs were in compliance with the County's zoning ordinances when they sought written verification of compliance on August 20, 1991. It follows that plaintiffs have a vested right to obtain written verification of zoning compliance despite the enactment of the September 26, 1991, zoning ordinance. *WMM Properties v. Cobb County*, supra. See generally *Southern States Landfill v. Walton County*, 259 Ga. 673, 674 (1) (386 SE2d 358) (1989) (indicating that, but for factual dispute as to whether landowner applied for sanitary landfill permit, landowner would have vested right to issuance of permit).

We disagree with the dissenting opinion's suggestion that the cases in this area of the law are in conflict. In *WMM Properties v. Cobb County*, supra, this court clarified the law: where a landowner is in compliance with zoning regulations, he is entitled to the issuance of a building permit at the time he applies for it; where a zoning ordinance is interpreted to preclude the issuance of a building permit, a landowner may nevertheless be entitled to the issuance of a building permit if he made a substantial change in his position in reliance upon assurances of zoning officials. Id. Thus, evidence of substantial expenditures plays no role where, as here, a landowner is in compliance with zoning regulations at the time he seeks written verification of zoning compliance. Compare *Gifford-Hill &c. v. Harrison*, supra at 265-266 (appellants entitled to permit to use property for crushed stone operation inasmuch as the use was permitted when appellants sought permit), with *Barker v. County of Forsyth*, 248 Ga. 73, 76 (281 SE2d 549) (1981) (evidence of substantial expenditures relevant where zoning officials renege on their assurance that appellants' proposed alpine slide is a permissible use under existing zoning ordinance).

2. Defendants contend that a 1983 sewerage ordinance prohibiting the disposal of "garbage" except at a county operated landfill stands in the way of written verification. We disagree. The ordinance was designed to regulate refuse in the county sewer system, not the placement of sanitary landfills; thus, it is not applicable. See *Bd. of Commrs. v. Welch*, 253 Ga. 682, 683 (1) (324 SE2d 178) (1985) (zoning ordinance must be construed strictly in favor of property owner).

Defendants themselves acknowledged that the ordinance was inapplicable when (following the entry of the trial court's June 29, 1993, order) they informed the Environmental Protection Division that as of August 20, 1991, plaintiffs' intended use was not prohibited by any previously enacted zoning ordinance. They cannot now take a position that is inconsistent with that acknowledgment. See *Fulton County v. Threatt*, 210 Ga. App. 266, 267 (1) (435 SE2d 672) (1993).

*Judgment affirmed. All the Justices concur, except Hunt, C. J., and Carley, J., who concur in the judgment only; Sears-Collins and Hunstein, JJ., dissent.*

HUNSTEIN, Justice, dissenting.

In March 1987, Banks County enacted an ordinance to allow R & B Wastes, Inc. to operate a 20-acre landfill on a 64-acre tract. Banks County had no zoning ordinance in effect at the time of this ordinance. In July 1990, the county enacted an interim zoning ordinance, to expire in December 1990, which provided that landfills were "conditional" uses and required rezoning and/or conditional use approval from the county for the expansion or extension of landfills. Before the expiration of the interim zoning ordinance, the county enacted an amendment to the R & B landfill ordinance authorizing R & B to expand its operation onto the entire 64-acre original tract *and* an adjacent 77-acre tract. Thereafter, in April 1991, the county enacted a comprehensive zoning ordinance, which contained the same provision as to the conditional use of landfills as did the interim zoning ordinance. Both the interim zoning ordinance and the April 9, 1991 zoning ordinance have been held void for procedural irregularities, primarily, the county's failure to first enact a land use policies and procedure ordinance before enacting the zoning ordinance.

In July 1991, members of the Daniel family, who own the 64-acre tract where the R & B landfill is operated as well as the approximately 423 acres surrounding the landfill tract, entered into a series of sales agreements consolidating ownership of their 487 acres in certain family members who, in turn, entered into sales and/or option contracts with Chambers of Georgia, Inc., all sales (though not all options) contingent upon the *entire* 487 acres being permitted for landfill use. On August 13, 1991, Banks County published proper notice of a hearing to be held on September 3 to enact a land use policies and

procedure ordinance. Appellees' application for a written verification letter was made one week later, on August 20, 1991. The land use policies and procedure ordinance was enacted, notice of the hearing on the zoning ordinance was published, and a second Banks County zoning ordinance (with terms identical to the April 9, 1991 ordinance) was enacted September 26, 1991.

From these facts it is apparent (1) that the county had been trying for over a year to enact a valid, comprehensive zoning ordinance; (2) that appellees were well aware[1] of the county's activities in this regard and its effect on their properties; (3) that the county was willing for appellees to expand their landfill to include not only the remaining acreage of the 64-acre tract but also the adjacent 77-acre tract (a total of 141 acres), as evidenced by the amended R & B landfill ordinance; (4) and that appellees' application for the verification letter for the *487* acres was not filed until *after* the county initiated the steps to enact a valid zoning ordinance. A review of the record also reveals that although appellees claim to have expended substantial sums in the development of the 141 acres encompassed in the amended R & B landfill ordinance, as to the remaining 346 acres included in the August 20, 1991 application there is no evidence whatsoever that appellees have " 'made a substantial change of position in relation to the land, made substantial expenditures, or [have] incurred substantial obligations.' [Cits.]" *Barker v. Forsyth County*, 248 Ga. 73, 76 (281 SE2d 549) (1981). This language from *Barker* states "the majority rule for vested rights." *Corey Outdoor Advertising v. Bd. of Zoning*, 254 Ga. 221, 225 (4) (327 SE2d 178) (1985).

Rather than applying this rule, the majority opinion follows the minority rule, see 4 Rathkopf, The Law of Zoning & Planning (4th ed.), § 50.03 [1], that the act of applying for a building permit *or* a prerequisite to such a permit, such as a certificate of zoning compliance, see *Clairmont Dev. Co. v. Morgan*, 222 Ga. 255 (2) (149 SE2d 489) (1966), is sufficient without more to vest in the landowner the right to use the property under the zoning regulations in effect at the time of the filing of the application for the permit.[2] This rule is set forth in *WMM Properties v. Cobb County*, 255 Ga. 436 (339 SE2d 252) (1986), rendered 11 months after this Court in *Corey Outdoor Advertising*, supra, quoted at length from the majority rule, as set forth in *Barker*, supra.

---

[1] Testimony at an administrative hearing established that Don Daniel, owner of several of the parcels in issue here, was a member of the Banks County Land Use Advisory Committee which was involved in the promulgation of the April 1991 zoning ordinance.

[2] Although the majority uses the "vested right" language only as to the obtaining of the letter itself, the authorities relied upon hold that the right vested is to use the land consistent with the permit and/or certification of zoning compliance notwithstanding subsequent zoning and land use changes.

Georgia courts have cited with approval and applied *both* the majority and the minority rule in this area of the law. The majority rule, which balances the landowner's need for stability with the local government's need for flexibility in rezoning property by elevating stability over flexibility in those instances where the landowner has reasonably relied and expended sums on a pre-existing land use, has obvious advantages over the minority rule, which allows landowners to accomplish precisely what Banks County, as noted in its interim zoning ordinance, sought to avoid: the "manipulation of land uses in contemplation of a final zoning resolution." As Banks County acknowledged in its interim ordinance:

> The details of a land use plan and a comprehensive zoning scheme take considerable time to work out. It would be destructive to the plan and permanent zoning resolution if, during the period of incubation and consideration of the land use plan and zoning resolution, persons seeking to evade its operation should be permitted to enter upon a course of construction that would progress so far as to defeat, in whole or in part, the ultimate execution of the land use plan and zoning resolution.

The majority opinion, by applying the minority rule to the facts of the instant case, allows appellees to evade the operation of the Banks County zoning ordinance by the mere filing of an application and allows appellees, who acted with knowledge of the impending zoning ordinance, to defeat that ordinance. Even under the minority rule applied by the majority, exceptions have been recognized to preclude the vesting of rights from the mere making of an application for a permit prior to a zoning change. Rathkopf, supra at § 50.03 [1] [a]. "Probably the most significant limitation on the [minority] rule is *where a zoning change is pending at the time of an application*." (Emphasis supplied.) Id. This is especially true where the evidence establishes that the landowner knew of the pending change and entered into a " 'race of diligence' to see if he could secure his permit before the [local government] could complete the legislative process." (Footnote omitted.) Id. Given the facts of this case, which clearly show appellees were not only aware of the "legislative process" but indeed actively participated in it, a reversal of the trial court's order should be forthcoming even under the authority relied upon by the majority.

However, I dissent because I consider the instant case to present an excellent opportunity to clarify our law in this area and to adopt the majority rule:

A landowner will be held to have acquired a vested right to continue and complete construction of a building or structure, and to initiate and continue a use, despite a restriction contained in an ordinance . . . where, prior to the effective date of the legislation and in reliance upon a permit validly issued, he has, in good faith, (1) made a substantial change of position in relation to the land, (2) made substantial expenditures, or (3) incurred substantial obligations.

(Footnote omitted.) Rathkopf, supra at § 50.03 [3]. See also *Barker*, supra. Accord *Clairmont Dev. Co.*, supra; *Cobb County v. Peavy*, 248 Ga. 870 (286 SE2d 732) (1982).[3] Because the trial court, by finding appellees to have a "vested right" as to the entire 487 acres set forth in the application, did not reach the issue whether appellees might have a vested right in any lesser acreage amount, specifically, the 141 acres on which appellees have asserted that they have expended "substantial sums," I would reverse the trial court and remand the case for further hearings in this regard.

I am authorized to state that Justice Sears-Collins joins in this dissent.

DECIDED JULY 5, 1994 —
RECONSIDERATION DENIED JULY 21, 1994.

*Stewart, Melvin & House, Frank W. Armstrong*, for appellants. *Peterson Dillard Young Self & Asselin, Dick Wilson, Jr., Larry M. Dingle, J. Stuart Teague, Jr., Joel L. Larkin*, for appellees.

---

[3] Adopting the majority rule would not require disturbing the holdings in *WMM*, supra; *Barker*, supra; or *Cohn Communities v. Clayton County*, 257 Ga. 357 (359 SE2d 887) (1987), since those cases arose under "pre-permit issuance" instances and involved analyzing the facts to determine whether a vested right was created due to sufficient and reasonable assurances given landowners by local government officials that permits would be forthcoming and substantial expenditures were thereafter made on the basis of those assurances.