44434. COHN COMMUNITIES, INC. v. CLAYTON COUNTY, GEORGIA et al.

(359 SE2d 887)

GREGORY, Justice.

In 1970 National Homes Development proposed to develop a mixed-use tract in Clayton County, including commercial, multi-family, single family and mobile home uses. By August 10, 1970, zoning had been approved, as applied for, for all four contiguous parcels on the 700 acres.[1] National Homes initially began development of the single family residential parcel and built over 200 residences. It sold the mobile home tract in 1983.[2] National Homes sold the remaining undeveloped parcels to appellant in September 1985. This included 50 acres zoned multi-family; 19 acres zoned commercial; and 305 acres zoned single-family. Prior to the sale the appellant obtained a letter from the county planner stating that the multi-family parcel at issue in this appeal "is presently zoned R-3 Multi-Family Residence District according to the current Clayton County Zoning Resolution text and map." The appellant says but for this "assurance" from the county planner, it would not have purchased the property since its intention was to use the proceeds from the sale of the commercial and multi-family parcels to finance its development of the single-family parcel.[3] Subsequently homeowners in the single-family development built by National Homes petitioned the Clayton County Commission to rezone the multi-family parcel to single-family residential. In April 1986, the Commission on its own motion filed an application to rezone

---

[1] At this time the Clayton County Zoning Ordinance contained no provision for a planned unit development.

[2] *Cannon v. Clayton County,* 255 Ga. 63 (335 SE2d 294) (1985), arose out of the county's refusal to issue building permits to the purchaser of the mobile home tract.

[3] The appellant has closed in escrow on the sale of the multi-family parcel pending outcome of this litigation.

the property. Cohn obtained a TRO to prevent the Commission from acting on the rezoning proposal. It then filed this action for injunctive and mandamus relief. No action has been taken on the proposed rezoning.

The trial court entered judgment in favor of the County, finding that the letter from the county planner was not an "assurance" which would confer a vested right on the appellant. The trial court further found that the $600 appellant has expended on developing the multifamily parcel since the time of purchase is not a substantial sum such as would confer vested rights on appellant within the meaning of *Cannon v. Clayton County,* 255 Ga., supra.

1. The primary issue before us is whether Cohn has any vested rights in the multi-family zoning in question. It is undisputed that Cohn's predecessor, National Homes, spent in excess of $700,000 installing sewer systems and water treatment plants for the *entire* tract. It is also undisputed that while the appellant has spent nearly $900,000 in developing the single-family parcel, it has spent no more than $600 in grading and developing the multi-family parcel.

The rule in Georgia is that where a landowner makes a substantial change in position by expenditures in reliance upon the probability of the issuance of a building permit, based upon an existing zoning ordinance and the assurances of zoning officials, he acquires vested rights and is entitled to have the permit issued despite a change in the zoning ordinance which would otherwise preclude the issuance of a permit. *Barker v. County of Forsyth,* 248 Ga. 73 (281 SE2d 549) (1981); *Cannon v. Clayton County,* 255 Ga. 63, supra; *WMM Properties v. Cobb County,* 255 Ga. 436 (339 SE2d 252) (1986). This rule is derived from the principle of equitable estoppel in that the landowner, relying in good faith upon some act or omission of the government, has made a substantial change in position or incurred such extensive obligation and expenses that it would be highly inequitable and unjust to destroy the rights he has acquired. 4 Rathkopf, The Law of Zoning and Planning, § 50.04; *Town of Largo v. Imperial Homes, Corp.,* 309 S2d 571 (Fla.2d DCA 1975). "Courts which have adopted [this] view have taken the realistic position that the expenses involved would not ordinarily have been incurred if a landowner had not reasonably assumed that after all the pre-permit approvals were secured so that the property was both zoned and approved for the contemplated use and structures, the building permits required to effectuate it, in all reasonable probability, would issue." 4 Rathkopf, The Law of Zoning and Planning, § 50.03 at 50-23. The Georgia cases cited have applied the rule to situations where the landowner, relying in good faith on official assurances that a building permit will probably issue to develop the property in question as it is currently zoned, makes a substantial change in his position by the expenditure of sub-

stantial sums of money.

Appellant relies on a letter from the county planner stating the present zoning of the tract in question. This is not the kind of assurance required in the creation of vested rights under *Barker,* supra. It lacks the quality of promise necessary to an estoppel. There is no notice to the zoning official that the landowner is about to expend substantial sums in reliance on information received. Nor is there any assurance that necessary permits will probably issue. It is no more than a neutral statement of the present zoning in effect, a fact the landowner could easily obtain himself by consulting the proper records. Further, the sum of $600, under the circumstances, is not a substantial expenditure sufficient to vest rights.

Appellant maintains that we should consider the $700,000 National Homes spent in developing the entire tract in determining whether appellant has expended a "substantial sum" in reliance on the multi-family zoning. This argument overlooks the fact that the landowner must make a substantial change in position *in reliance on* the official assurances that a building permit will probably issue. *Barker v. County of Forsyth,* supra.

Even if we were to hold that the letter in question was an "official assurance" which, coupled with substantial expenditures would vest zoning rights in the appellant, the "substantial sums" expended by National Homes were not made in reliance on this letter.

2. Appellant contends that Section 125 of the Clayton County zoning ordinance is violative of due process because it provides that the "governing authority of the county . . . may file an application for rezoning if deemed to be in the best interest of the county without actual written notice to the individual property owner."

The appellant is correct in stating that due process requires that a landowner be given notice and a right to be heard before a governing authority may rezone the landowner's property. *Bell v. Studdard,* 220 Ga. 756 (141 SE2d 536) (1965). However, as the trial court found, the challenged section of the Clayton County zoning ordinance applies only to the *filing* of an application to rezone property. Section 122 of the zoning ordinance provides that "a public hearing shall be held by the Board of County Commissioners before adoption of any proposed amendment [to rezone] and at least fifteen days notice of the time and place of the hearing shall be published in a newspaper of general circulation in Clayton County." Thus the required due process is afforded. See *Wilson v. City of Snellville,* 256 Ga. 734 (352 SE2d 759) (1987).

3. We agree with appellant that since no action has been taken on the application to rezone appellant's property, the trial court acted prematurely in applying the standards of *Guhl v. Holcomb Bridge Rd. Corp.,* 238 Ga. 322 (232 SE2d 830) (1977), to the facts of this case.

The trial court was correct, however, in its determination that appellant is not entitled to an injunction on any of the grounds alleged.

*Judgment affirmed. All the Justices concur, except Smith, J., who dissents.*

SMITH, Justice, dissenting.

The Majority correctly states that the primary issue in this case is whether Cohn Communities has any vested rights in the multi-family zoning of the 50-acre parcel. It is inappropriate, however, to consider the multi-family tract independent of the entire development. In 1970 National Homes, Cohn's predecessor in title, presented to Clayton County a plan for the mixed use development of a 700-acre tract of land. Clayton County's zoning ordinance has no provision for planned unit development so each parcel was separately zoned. National Homes spent approximately $700,000 on the project for an oxidation pond, sewer lines, and roads and streets including a major thoroughfare with an 80-foot right-of-way. This initial development was in support of the common scheme of development for the entire 700 acres. National Homes built and sold approximately 200 homes before economic conditions stopped further development. In 1985, National Homes sold their entire interest in the development to Cohn. Cohn was aware of the mixed-use development plan and there is no doubt that the purchase price of the remaining acreage reflected the value of the zoning scheme as well as National's initial development investment. In fact, Cohn's expressed purpose for buying into the development was to sell the multi-family tract in order to finance the development of the single-family parcel. The multi-family parcel was valuable to Cohn in the future development of the entire tract. So valuable in fact that Cohn chose not to rely on 17 years of unchanged zoning on the parcels in the development and sought assurance from the county planner that the 50-acre parcel was zoned multi-family. In reliance on the county planner's response, Cohn closed the sale on the entire acreage and commenced development. Cohn spent nearly $900,000 developing the single-family portion and a nominal amount on the multi-family portion. The amounts spent on each parcel are irrelevant however because all the money was spent on the common scheme of development, each parcel being inseparable from the entire development scheme. Cohn has an investment backed expectation of the value of the multi-family parcel and that expectation is being diminished by the actions of the County.

The "intermediate" rule in this state is that where a landowner has substantially changed his position by expenditures in reliance of existing zoning ordinances and assurances of government officials he has acquired vested rights. Thus far this rule has only been applied to situations in which expenditures were made in reliance of assurances

that building permits would issue. *WMM Properties v. Cobb County*, 255 Ga. 436 (339 SE2d 252) (1986); *Cannon v. Clayton County*, 255 Ga. 63 (335 SE2d 294) (1985); *Barker v. County of Forsyth*, 248 Ga. 73 (281 SE2d 549) (1981). In this case, Cohn has made no application for building permits but has relied on the existing zoning and assurances of the county planner while making its investment decision.

As a general rule a purchaser of land takes subject to all rights and equities associated with the land. See *Yancey v. Harris*, 234 Ga. 320 (216 SE2d 83) (1975); 2 Patton on Titles 603, § 674 (2nd ed. 1957). A purchaser has constructive notice of these rights and equities if they were discoverable after reasonable inquiry. Not only did Cohn discover the zoning of the property, but, they made it an integral part of their bargain with National Homes. Cohn acquired National Home's entire remaining interest in the mixed-use development and thus acquired a vested interest in the zoning plan. Cohn spent substantial sums in reliance on this zoning scheme and the unilateral action of the Zoning Commission will cause substantial damage to Cohn.

Even if one could conclude that Cohn had no vested interest in the zoning plan for the 50-acre tract, the fact remains that the sale of the parcel, now held in escrow, would dissolve and cause Cohn $425,000 in actual damages. Expert testimony at trial estimated that developing the 50-acre tract under the single-family zoning classification would cause over one million dollars in damages to Cohn. This is a significant diminution in value for which the County has offered no reasonable justification.

I respectfully dissent.

DECIDED SEPTEMBER 9, 1987.

*Dillard, Greer, Westmoreland & Wilson, George P. Dillard*, for appellant.

*Glaze, Fincher & Bray, George E. Glaze, Steven M. Fincher, James E. Ervin*, for appellees.