A00A1884. NORTH GEORGIA MOUNTAIN CRISIS NETWORK, INC. v. CITY OF BLUE RIDGE.
(546 SE2d 850)

PHIPPS, Judge.

North Georgia Mountain Crisis Network appeals a superior court order enjoining it from operating a domestic violence shelter on a certain piece of property (hereinafter referred to as "the Hopkins house") in Blue Ridge. The Crisis Network contends that the trial court erred in applying a zoning amendment which the City enacted after the Crisis Network purchased the Hopkins house. The Crisis Network argues that it had a pre-existing right to use the Hopkins house as a domestic violence shelter and that the City's purpose in passing the amendment was discriminatory. We affirm the judgment of the trial court because we find that it was correct in applying the amended ordinance and that discrimination has not been shown.

Apparently, while the Crisis Network's purchase of the Hopkins house was pending, its attorney told the mayor of Blue Ridge that it was planning to purchase the property and use it as a domestic violence shelter. At the time, the property was zoned R-1 for low-density residential development, which permitted "[p]ublic governmental facilities or institutions." The ordinance defined "institution" as "[a] public or semi-public building occupied by a governmental entity, non-profit corporation or non-profit establishment for public use." The mayor told the Crisis Network's attorney that he did not believe

the zoning ordinance would permit the intended use of the Hopkins house.

On or about August 12, 1997, residents in the Hopkins house area sent a letter to the mayor expressing concern about the Crisis Network's plan to use the house as a shelter. After consulting with a zoning specialist, on August 15 the mayor wrote to the executive director of the Crisis Network that the City had researched the matter and believed that "the R-1 zoning district does not allow for the existing [sic] of a Family Crisis Center." On August 18, the mayor sent a letter to the closing attorney for the Crisis Network, again stating the City's position that a crisis center could not be located in an R-1 zone.

On August 20, the Crisis Network closed its purchase of the Hopkins house. On September 11, the Crisis Network sent a letter to the mayor stating that it had purchased the Hopkins house, that it disagreed with the City's interpretation of the zoning ordinance, and that it intended to operate a domestic violence shelter at the site.

On April 1, 1998, the City filed an action in superior court seeking a declaratory judgment and injunctive relief. On July 30, the Mayor and City Council of Blue Ridge applied to the Blue Ridge Municipal Planning Commission to strike the words "or institutions" from the permitted uses for R-1 zoning. The planning commission adopted the amendment after a public hearing held on September 29.

On November 22, 1999, the City's lawsuit was heard by the trial court. On December 22, the court issued its order in favor of the City, ruling that the Crisis Network had not acquired a vested right to operate a domestic violence shelter at the Hopkins house and that the current zoning ordinance did not allow for such a use in an R-1 zone.

1. In support of its argument that it had a pre-existing right to use the Hopkins house as a domestic violence shelter, the Crisis Network cites the grandfather clause in the Blue Ridge zoning ordinance. That clause provides, "A nonconforming use may be continued, but no nonconforming use which has been discontinued for a continuous period of twelve months shall be reestablished." The trial court's order does not address this issue, but we will consider it because it is arguably embraced within the oral argument that the Crisis Network presented to the trial court.

First, the record contains virtually no evidence that the Crisis Network had ever used the Hopkins house as a domestic violence shelter. Its executive director conceded that at the time of the hearing the property was not being used as a shelter. The organization operated its shelter at a different location which was under lease through June 2000. The Crisis Network had purchased the Hopkins house with hopes of relocating its shelter there after its lease expired

on the other property. The Crisis Network had not made any efforts to make the house useable as a shelter or to bring the house into compliance with state and federal funding requirements.

Moreover, as of the date of the hearing, only one client of the Crisis Network had ever stayed in the Hopkins house. That client had stayed there for approximately one week in late July or early August 1998. Although there was room for her in the existing shelter, the Crisis Network had assigned her to stay at the Hopkins house so that it could begin to establish a factual basis for asserting that the house was being used as a shelter. Aside from the stay of that one client, the Crisis Network had used the house only as an office for its sexual assault programs.

"[A] use which is merely contemplated for the future but unrealized as of the effective date of the regulation" does not constitute a nonconforming use.[1] Even assuming the evidence established that the Crisis Network actually had used the Hopkins house as a shelter, such use had not occurred during the roughly 14 months between the enactment of the zoning amendment and the court hearing.[2] Thus, by its terms, the grandfather clause no longer applied.

2. The issue then becomes whether the Crisis Network had acquired a vested right to use the property in conformity with the original zoning.[3] The principle of equitable estoppel is applied to determine whether "the landowner, relying in good faith upon some act or omission of the government, has made a substantial change in position or incurred such extensive obligation and expenses that it would be highly inequitable and unjust to destroy the rights he has acquired. [Cits.]"[4] Georgia courts have held that:

> where a landowner makes a substantial change in position by expenditures in reliance upon the probability of the issuance of a building permit, based upon an existing ordinance and the assurances of zoning officials, he acquires vested rights and is entitled to have the permit issued despite a change in the zoning ordinance which would otherwise preclude the issuance of a permit.[5]

---

[1] *Rainwater v. Coweta County Bd. of Zoning Appeals*, 123 Ga. App. 467, 468 (181 SE2d 540) (1971).

[2] The amendment was adopted on October 13, 1998.

[3] See generally *Recycle & Recover v. Ga. Bd. of Natural Resources*, 266 Ga. 253, 254 (2) (466 SE2d 197) (1996). The record contains no determination regarding whether the original zoning allowed for use of the subject property as a domestic violence shelter.

[4] *Cohn Communities v. Clayton County*, 257 Ga. 357, 358 (1) (359 SE2d 887) (1987).

[5] Id.; *Barker v. County of Forsyth*, 248 Ga. 73, 76 (2) (281 SE2d 549) (1981); *WMM Properties v. Cobb County*, 255 Ga. 436, 439 (1) (d) (339 SE2d 252) (1986).

Here, the only change of position alleged by the Crisis Network is the purchase of the Hopkins house property. However, the purchase of land by itself does not confer a vested right to a particular use upon the purchaser.[6] Moreover, there is no evidence that the Crisis Network purchased the property in reliance upon an assurance from a zoning official that the property could be used as a domestic violence shelter in the R-1 zone. To the contrary, the property was purchased despite warnings that it could not be so used. According to its executive director, the Crisis Network purchased the property believing it was a good investment even if it could not be used as a shelter. Under these circumstances, we find that the Crisis Network did not acquire a vested right to use the property as zoned on the purchase date.[7]

3. A local zoning ordinance must be free of discrimination both on its face and in its application.[8] But a zoning amendment does not discriminate against a property owner merely because the amendment may have originated from complaints by neighbors of the property owner.[9] The Crisis Network has not been singled out as it contends, because the amended ordinance is applicable to all property owners in R-1 zones.[10] "[T]he fact that some . . . officials may have been aware that the existing ordinance could be amended and that [the Crisis Network] could not meet the requirements of a stricter ordinance does not mean that [it] has been singled out. . . ."[11]

Thus, we find no merit in the Crisis Network's argument that the amendment was enacted for discriminatory purposes.[12]

*Judgment affirmed. Johnson, P. J., and Smith, P. J., concur.*

DECIDED MARCH 6, 2001.

*James L. Bass*, for appellant.
*Mitchell & Mitchell, Terry L. Miller*, for appellee.

---

[6] See 4 Rathkopf, The Law of Zoning and Planning, § 50.04 (d), pp. 50-47, 50-48; Anderson's American Law of Zoning (4th ed.), § 6.21, pp. 544-547.

[7] Compare *City of Atlanta v. Westinghouse Elec. Corp.*, 241 Ga. 560 (246 SE2d 678) (1978).

[8] See, e.g., *Shoemake v. Woodland Equities*, 252 Ga. 389, 392 (1) (313 SE2d 689) (1984).

[9] *Warren v. City of Marietta*, 249 Ga. 205, 207 (3) (288 SE2d 562) (1982).

[10] Id.

[11] (Punctuation omitted.) Id.

[12] On appeal, the Crisis Network has not challenged the legality of the process through which the amendment was adopted.