313 Ga. 621
FINAL COPY

S21G0857.  BROWN et al v. CARSON et al.

COLVIN, Justice.

We granted certiorari in this case to decide whether E. Howard Carson[1] acquired a vested right to develop property in a particular manner based upon alleged assurances made to him by Tom Brown, the Forsyth County Planning Director.  Based on the record before this Court, we conclude that Carson did not acquire a vested right; therefore, we reverse the decision of the Court of Appeals to the contrary and remand the case with direction.  See *Carson v. Brown*, 358 Ga. App. 619 (856 SE2d 5) (2021).[2]

---

[1] Carson is the principal for Red Bull Holdings II, LLC, the property owner in this case.

[2] Carson filed three appeals in the Court of Appeals, two of which concerned separate actions for mandamus and injunctive relief based on his claim that he obtained vested rights to develop the property when he applied for a land disturbance permit. The Court of Appeals dismissed those two cases as moot, concluding that, because Carson already had a vested right, he did not need mandamus or injunctive relief.   See *Carson*, 358 Ga. App. at 619. Neither party petitioned for review of those rulings; however, because our holding affects the Court of Appeals's reasoning on mootness, the court will need to reconsider those appeals on remand.

1. On March 14, 2016, Carson met with Brown and discussed Carson's plans to purchase approximately 17 acres of land and develop that property into 42 separate 9,000-square-foot residential lots. See *Carson*, 358 Ga. App. at 621 (1) (a). The record shows that, in his role as Planning Director, Brown was allowed to interpret the zoning code; however, he could not unilaterally promise or authorize the issuance of a building permit. The record further shows that Carson knew prior to that meeting that the current zoning code allowed for 9,000-square-foot lots.

During the March 14 meeting, Carson showed Brown a hand-drawn document depicting Carson's proposed subdivision layout, and then asked Brown to confirm whether the current zoning code allowed for 9,000-square-foot lots on the subject property. See *Carson*, 358 Ga. App. At 621 (1) (a). Brown confirmed that the code, as currently written, provided for that lot size. See id. "Brown, however, 'made no representations as to future (zoning code) changes that might impact the indicated property nor did (he) guarantee that Carson would be able to build out this subdivision at

2

9,000[-]square[-]foot lots.'" See id. Two days later, Carson made an offer on the property, see id., and the record shows that he closed on the property approximately two weeks later.

Carson claimed that based upon his interactions with Brown and, later, with persons in the County's water and sewer department, "he spent in excess of $83,000.00 obtaining the requisite plans, studies, appraisals, and the like, pursuing development of the property with a residential subdivision consisting of up to 42 lots." *Carson*, 358 Ga. App. at 621-622 (1) (a) (punctuation omitted). Then, in August 2016, the Forsyth County Board of Commissioners "imposed a moratorium on the acceptance of applications for land disturbance permits" for 9,000-square-foot residential lots. Id. at 619 (footnote omitted).[3] Shortly after the moratorium went into effect, Carson sought a land disturbance permit, which was denied. See id. Carson then filed an application

---

[3] In October 2016, the Board of Commissioners amended the County's zoning code to prohibit the development of 9,000-square-foot residential lots. See *Carson*, 358 Ga. App. at 619.

with the Forsyth County planning department for a determination of his vested rights to develop the property with 9,000-square-foot lots. See id. at 620 (1) (a). The county attorney issued a decision that Carson did not have a vested right to develop the property. Carson appealed to the zoning board and the Forsyth County Superior Court, both of which affirmed the decision of the county attorney. See id. at 620-622 (1) (a). Carson then appealed, arguing that he had "acquired vested rights to develop the property consistent with the zoning regulations in place when he bought it and undertook to obtain sewer easements for the property." Id. at 622 (1) (a). The Court of Appeals reversed the decision of the zoning board, concluding that Carson bought the subject property and made expenditures regarding the property's development after relying upon the assurances of zoning officials that a building permit would issue. See id. at 623 (1) (b) (quoting *Cohn Communities v. Clayton County*, 257 Ga. 357, 358 (1) (359 SE2d 887) (1987)). We granted certiorari. For the reasons set forth below, we reverse the decision of the Court of Appeals.

4

2.     This Court has recognized four different scenarios wherein a landowner could acquire a vested right to initiate a specific use of a property despite a change in zoning laws. Those instances are when the landowner relies upon (1) issued building and other permits, (2) the law in existence at the time a landowner properly files an application for a permit, (3) formally and informally approved development plans, or (4) official assurances that a building permit will probably issue. See *WMM Properties v. Cobb County*, 255 Ga. 436, 438-439 (1) (c) (339 SE2d 252) (1986). This case concerns a right asserted based on the last category. Accordingly, in order to determine whether Carson acquired a vested right, we must look to whether he "ma[de] a substantial change in position by expenditures in reliance upon the probability of the issuance of a building permit, based upon an existing zoning ordinance and the assurances of zoning officials[.]" *Cohn*, 257 Ga. at 358 (1) (citing *Barker v. County of Forsyth*, 248 Ga. 73, 76 (2) (281

SE2d 549) (1981)).[4]

The Court of Appeals erroneously concluded that the March 14, 2016 discussion established that Brown made an assurance to Carson. Specifically, the Court of Appeals explained that Georgia law does not require "that the zoning official's assurances cover possible future changes" or that the assurance "make[s] any specific representation or contain[s] any magic words." *Carson*, 358 Ga.

[4] *Barker* summarily announced this test, relying on a 1963 Illinois Supreme Court opinion. See 248 Ga. at 76 (citing *Cos Corp. v. City of Evanston*, 190 NE2d 364, 367-368 (Ill. 1963)). Neither *Barker* nor *Cohn* defines the term "zoning officials" or clarifies how many or what kind of "zoning officials" need to be consulted before a landowner can reasonably rely on their assurances that a building permit will issue. These cases also appear to be in tension with Georgia statutory law that "[a] governing authority may not be estopped regarding an ultra vires act." *City of Warner Robins v. Rushing*, 259 Ga. 348, 348 (381 SE2d 38) (1989) (citing OCGA § 45-6-5, which states: "Powers of all public officers are defined by law and all persons must take notice thereof. The public may not be estopped by the acts of any officer done in the exercise of an unconferred power."). See also *Corey Outdoor Advertising v. Bd. of Zoning Adjustments of the City of Atlanta,* 254 Ga. 221, 224 (3) (327 SE2d 178) (1985) (explaining that "equitable estoppel will not apply so as to frustrate or contravene a governmental function of a governmental unit"); *City of Calhoun v. Holland*, 222 Ga. 817, 819 (152 SE2d 752) (1966) ("In dealing with public agents, every person must take notice of the extent of their powers at his peril[.]" (citation and punctuation omitted)). Though the *Barker* majority opinion did not mention what is now OCGA § 45-6-5, the statute was cited by the dissent. See *Barker*, 248 Ga. at 78 (Hill, P. J., dissenting). However, we need not address these issues further here, as there was no assurance made to Carson in this case.

App. at 623 (1) (b).  In order to acquire a vested right based on an assurance, however, a landowner must show, in part, the landowner's "reliance upon *the probability* of the issuance of a building permit," meaning that the alleged assurance requires a representation that a building permit *will likely issue* in the future. *Cohn*, 257 Ga. at 358-359 (1) (emphasis supplied) (explaining that "this rule is derived from the principle of equitable estoppel," and that Georgia courts have applied it "to situations where the landowner, relying in good faith on official assurances that a building permit *will probably issue* to develop the property in question as it is currently zoned, makes a substantial change in his position by the expenditure of substantial sums of money" (emphasis supplied)).  Cf. *WMM Properties*, 255 Ga. at 439 (1) (d) (approval of development plan from all relevant county departments without stipulations, together with county planning commission's issuance of a certificate of zoning, qualified as an assurance creating a vested right); *Spalding County v. East Enterprises*, 232 Ga. 887, 887-889 (209 SE2d 215) (1974) (landowner acquired a vested right to develop

property when he purchased the property in reliance upon the assurance of one county commissioner that the property was zoned for the intended use, the landowner's development plan was informally approved by the county commissioners, and he expended money in reliance on the same).

Here, the record shows no assurance from Brown that a building permit would probably issue or that the county would not change the property's zoning. In other words, Brown's words were "no more than a neutral statement of the present zoning in effect, a fact [Carson] could easily [have] obtain[ed] himself by consulting the proper records." *Cohn*, 257 Ga. at 359 (1). The Court of Appeals's determination to the contrary was erroneous.

We are also unpersuaded by the Court of Appeals's attempt to distinguish our decision in *Cohn* from the present case. In concluding that this case did not fall squarely within *Cohn*'s limitation on what qualifies as an assurance, the Court of Appeals relied on the fact that Brown's confirmation to Carson "occurred within the context of a face-to-face discussion," wherein Carson

8

expressed an interest in purchasing and developing the property and, later, spent in excess of $80,000 to prepare the land. *Carson*, 358 Ga. App. at 623-624 (1) (b). However, neither the letter issued by the zoning official in *Cohn* nor the discussion with Brown in this case included any assurance that a building permit would probably issue.

The Court of Appeals also concluded that, unlike *Cohn*, there was evidence that Brown had notice that Carson "was about to expend substantial sums in reliance on information received." *Carson*, 358 Ga. App. at 624 (1) (b). However, the record shows that, at the time of the March 14 meeting, Brown only knew that Carson was interested in purchasing a parcel of land and potentially developing the land into 42 lots, and "the purchase of land by itself does not confer a vested right to a particular use upon the purchaser." *North Georgia Mountain Crisis Network v. City of Blue Ridge*, 248 Ga. App. 450, 453 (2) (546 SE2d 850) (2001). Moreover, the record shows that Carson *knew* that the zoning ordinance allowed for 9,000-square-foot lots prior to his March 14 conversation

9

with Brown, and "there can be no estoppel by conduct where both parties have equal knowledge or equal means of knowing the truth." *City of Atlanta v. Black*, 265 Ga. 425, 429 (457 SE2d 551) (1995) (citation and punctuation omitted). Based on the foregoing, we agree with Brown that our decision in *Cohn* controls in this case. Accordingly, we reverse the decision of the Court of Appeals, and we remand the case with direction to consider the two other appeals that the court mooted based upon the holding we are reversing.

*Judgment reversed and case remanded with direction. All the Justices concur, except Warren, J., not participating.*

Decided May 3, 2022.

Certiorari to the Court of Appeals of Georgia — 358 Ga. App. 619.

*Jarrard & Davis, Ken E. Jarrard, Melissa A. Klatzkow*, for appellants.

*Bruce M. Edenfield; Resolute Law, Jeffrey R. Davis; Wilson Brock & Irby, Kyler L. Wise*, for appellees.

*Larry W. Ramsey, Jr., G. Joseph Scheuer; Laura K. Johnson, Bennett D. Bryan, Gabriel L. Daniel; Rusi C. Patel, Emily C. Hirst*, amici curiae.