**THIRD DIVISION**
**DOYLE, P. J.,**
**McFADDEN, P. J. AND HODGES, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 7, 2023**

# In the Court of Appeals of Georgia

A20A2016, A20A2017. CARSON et al. v. BROWN et al.; and vice versa.

A21A0139. CARSON et al. v. BROWN et al.

McFADDEN, Presiding Judge.

In *Carson v. Brown*, 358 Ga. App. 619 (856 SE2d 5) (2021) ("*Carson II*"),[1] we held that a landowner obtained vested rights to develop land in Forsyth County in a particular manner by virtue of "purchasing the property and making expenditures in reliance upon the probability that a building permit would issue, based upon the property's then-current zoning status and the assurance of zoning officials." Id. Given that disposition, we did not reach other arguments in favor of the landowner's claim

---

[1] *Carson v. Brown*, 358 Ga. App. 619, was the second appearance before this court of the cases addressed here in Cases No. A20A2016 and A20A2017. We first considered those cases in *Carson v. Brown*, 348 Ga. App. 689 (824 SE2d 605) (2019) ("*Carson I*"), which we discuss in more detail below.

of vested rights (Case No. A21A1039), id. at 624-625 (1) (c), and we dismissed as moot cross-appeals from a summary judgment ruling in a related case in which the landowner had sought mandamus and injunctive relief pertaining to the county's processing of an application for a land disturbance permit for the property (Cases No. A20A2016 and A20A2017). Id. at 625-626 (2).

The Supreme Court of Georgia reversed our decision in *Brown v. Carson*, 313 Ga. 621 (872 SE2d 695) (2022) ("*Carson III*"), holding that the record did not demonstrate an assurance that gave rise to the vested rights claimed by the landowner. Id. at 622-625 (2). The Court did not address or consider the landowner's alternative arguments in support of the claim for vested rights. See id. The Court "remand[ed] the case with direction to consider the two other appeals that [we] mooted[.]" Id. at 625 (2).

We therefore vacate our opinion in *Carson II*, 358 Ga. App. 619, and in its place we adopt as our own the Supreme Court's opinion in *Carson III*, 313 Ga. 621. As detailed below, we find that none of the landowner's other arguments for vested rights in Case No. A21A0139 have merit, so we affirm that judgment.

As for the landowners actions for mandamus and injunctive relief, Cases No. A20A2016 and A20A2017, we affirm in part and reverse in part. We affirm the trial

court's threshold ruling that the landowner did not fail to exhaust administrative remedies before bringing the action for mandamus and injunctive relief. But on the merits, we also affirm the trial court's declaration that a valid moratorium existed when the landowner applied for a land disturbance permit and that the moratorium barred the county from accepting the landowner's permit application. So we reverse that portion of the trial court's order in which the trial court required certain county employees to accept and process the application and affirm that portion of the order in which the trial court refused to require the employees to process the permit application without regard to the moratorium.

1. *Overview of the facts and procedural history.*

Because this opinion addresses related appeals requiring different standards of review, we provide at this point merely an overview of the facts and procedural history. Where appropriate below, we address the facts in greater detail under the applicable standards of review.

The Supreme Court's opinion and our prior opinions set forth most of the facts and procedural posture. See *Carson III*, 313 Ga. 621; *Carson II*, 358 Ga. App. 619; *Carson v. Brown*, 348 Ga. App. 689 (824 SE2d 605) (2019) ("*Carson I*"). As those opinions explain, these related cases concern the efforts of a landowner, Red Bull

3

Holdings II, LLC, and its principal, E. Howard Carson, Jr. (collectively, "Carson"), to develop real property with 9000-square-foot lots. When Carson bought the property in the spring of 2016, the county's zoning code permitted that density, but the zoning code was later amended to require larger lot sizes.

Carson bought the property after confirming with the county's planning director, Tom Brown, that the zoning code in place at the time allowed for his desired density. He then took steps to obtain the necessary sewer easements for his planned development and to prepare an application for a land disturbance permit.

In August 2016, the county took actions in an effort to impose an emergency, temporary moratorium barring the acceptance of land disturbance permits for development at certain densities, including those for 9000-square-foot lots. On September 1, 2016, the county issued a resolution extending the moratorium[2] until December 7, 2016. In October 2016, the county's Board of Commissioners amended the zoning code to prohibit lots of that size.

On September 7, 2016, after the county had issued the resolution extending the moratorium but before the county amended the zoning code, Carson submitted an

[2] The parties dispute whether these comprised a single moratorium or multiple moratoria. That distinction does not affect our disposition of these appeals, as explained below, so for convenience we use the word "moratorium."

4

application for a land disturbance permit to develop his property with 9000-square-foot lots. The parties dispute whether or not the county accepted that application for processing. On September 9, a planner technician in Brown's department, Carroll Williams, informed Carson in writing that she was "releasing this plan back to [Carson] because of the moratorium. . . ."

Carson sought an administrative determination that he had vested rights to develop the property at his desired density. The county's planning department ruled against him, and Carson appealed that decision to the county's zoning board of appeals (ZBA), which affirmed the decision. Carson then petitioned the Superior Court of Forsyth County for a writ of certiorari against the county and its planning director, Brown. The superior court affirmed the ZBA decision, and in Case No. A21A0139 we granted Carson's application for discretionary appellate review.

Meanwhile, Carson brought a separate action in superior court against Brown and Williams in their individual and official capacities. In that action, styled a "petition for mandamus," Carson sought an order declaring the moratorium void and directing Brown and Williams to process his permit application under the iteration of the zoning code allowing for 9000-square-foot lots. See *Banks County v. Chambers of Ga.*, 264 Ga. 421, 423-424 (1) (444 SE2d 783) (1994) (holding that a

landowner has a vested right to use his property in accordance with the zoning regulations in effect at the time he applied for a permit).

After the trial court partially granted Brown and Williams's motion for judgment on the pleadings in the mandamus action, both sides appealed, and in *Carson I* we affirmed in part and reversed in part the trial court's ruling, concluding that some claims could proceed against Brown and Williams in their individual capacities. *Carson I*, 348 Ga. App. at 706 (2) (c). Among other things, in *Carson I* we rejected an argument by Brown and Williams that the mandamus action should be dismissed because Carson failed to exhaust administrative remedies. *Carson I*, 348 Ga. App. at 710 (3) (b).

After the case returned to the trial court, Carson amended his complaint to add claims for declaratory and injunctive relief against Brown and Williams in their individual capacities, and after additional discovery the parties filed cross-motions for summary judgment. Among other things, Brown and Williams reiterated their argument that Carson failed to exhaust administrative remedies. In a lengthy, substantive order, the trial court granted in part and denied in part the parties' motions. In summary, the trial court rejected Brown and Williams's argument that Carson had failed to exhaust administrative remedies; declared that the moratorium

was valid and enforceable; required Brown and Williams to accept Carson's permit application for processing (and enjoined them from refusing to process it); and permitted Brown and Williams to consider the moratorium when processing the permit application.

2. *The administrative vested rights determination (Case No. A21A0139).*

In Case No. A21A0139, Carson claims that the superior court erred in affirming the ZBA's administrative decision that he had no vested right to develop his property under the zoning code that permitted his desired density. He makes three separate arguments in support of this claim: (1) because he spent money to buy the property and pursue its development in reliance upon assurances from the county that the zoning code applied to his property; (2) because he initiated a process to obtain sewer easements under the zoning code permitting 9000-square-foot lots; and (3) because the ordinance setting out the county's administrative procedure for determining vested rights lacked ascertainable standards or objective criteria for making that determination.

Only one of these arguments was addressed by us in *Carson II* and by our Supreme Court in *Carson III*: the first of the three arguments listed above, that Carson had made expenditures in reliance on assurances he claimed to have received

7

from the county. See *Carson III*, 313 Ga. at 622-625 (2); *Carson II*, 358 Ga. App. at 622-625 (1) (b), (c). Neither decision addressed or considered the merits of Carson's other two arguments. It was not necessary for us to do so in *Carson II* given our holding that Carson had vested rights by virtue of the county's assurances. And on certiorari in *Carson III*, the Supreme Court limited its review to that holding. So we now consider whether Carson is entitled to a determination that he has vested rights for one of the other two reasons asserted by him in Case No. A21A0139. See generally *Shadix v. Carroll County*, 274 Ga. 560, 563-564 (1) (554 SE2d 465) (2001) (on remittitur of an appeal from the Supreme Court, we must enter an appropriate disposition on issues that were neither addressed nor considered by the Supreme Court).

In reviewing Carson's claims related to the administrative vested rights determination, we view the evidence in the light most favorable to the ZBA's decision. See *Carson II*, 358 Ga. App. at 620-621 (1). Because the ZBA did not make any express written findings of facts or conclusions of law, we consider the entire evidentiary record. See Id.

We begin by acknowledging, as our Supreme Court did in *Carson III*, that there are

8

four different scenarios wherein a landowner could acquire a vested right to initiate a specific use of a property despite a change in zoning laws. Those instances are when the landowner relies upon (1) issued building and other permits, (2) the law in existence at the time a landowner properly files an application for a permit, (3) formally and informally approved development plans, or (4) official assurances that a building permit will probably issue.

*Carson III*, 313 Ga. at 622-623 (2) (citing *WMM Properties v. Cobb County*, 255 Ga. 436, 438-439 (1) (c) (339 SE2d 252) (1986)). The Supreme Court held in *Carson III* that there were no official assurances giving rise to a vested right in this case, eliminating the fourth of those scenarios. 313 Ga. at 623-625 (2). And as detailed below, the alternative grounds asserted by Carson — his initiation of a process to obtain sewer easements and the alleged inadequacies of the administrative procedure for obtaining a vested rights determination — do not fall within any of the other scenarios identified by our Supreme Court. So we affirm the trial court's ruling in Case No. A21A0139.

(a) *Initiation of a process to obtain sewer easements.*

Carson asserts that he had a vested right to develop the property under the zoning code in effect when Carson took initial steps to obtain sewer easements for his

9

proposed development, which occurred before the county imposed the moratorium.

As we described in our earlier opinion, Carson discussed

> his use of a specific process to obtain the easements with the director of the County's water and sewer department, and obtained approval from the director of preliminary sewer plans for the development so that (in the director's words) Carson could "mov[e] forward in negotiating the easements or requesting use of the Developer assisted [utility easement] condemnation policy." Carson then obtained appraisals of the sewer easements and made offers to adjoining landowners to purchase them. Carson informed those adjoining landowners, in communications copied to the water and sewer director, that he intended to develop 42 lots. He also discussed the sewer easements with the water and sewer department's right-of-way coordinator[, who] informed Carson that the director had "approved the project" and outlined the next steps Carson needed to take to obtain the easements, and [later] informed Carson that they could "move towards condemnation" of the easements if the adjoining landowners did not agree to Carson's offer to purchase them.

*Carson II*, 358 Ga. App. at 621 (1) (a).

Carson appears to argue that the second scenario identified above applies in this case — what the Supreme Court described in *Carson III* as reliance upon "the law in existence at the time a landowner properly files an application for a permit." *Carson III*, 313 Ga. at 622 (2). Stated another way, this rule provides that "[t]he

10

submission of a then-proper application for a permit gives an applicant a vested right to consideration of the application under the law in existence at the time the application is filed." *Fulton County v. Action Outdoor Advertising*, 289 Ga. 347, 349 (1) (711 SE2d 682) (2011) (citing *WMM*, 255 Ga. at 438 (1) (b)).

To support this argument, Carson cites *Banks County v. Chambers of Ga.*, supra, 264 Ga. 421, for the proposition that this scenario is not limited to applications for building permits but encompasses other types of actions by landowners, such as the request by the plaintiffs in *Banks County* that the county provide them with a written verification of compliance with zoning requirements, which they needed to support their application to a different governmental entity for a sanitary waste permit. See id. at 421-422. For purposes of our analysis, we will assume without deciding that the steps Carson took regarding the sewer easements could be viewed as a properly filed "application" for a "permit," so as to bring this case within the scope of the second scenario listed above. Even so, it does not follow that Carson had a vested right in having a future application for a land disturbance permit decided under the zoning regulations in effect when he sought the sewer easements. At most, this rule would give Carson the right to have his *sewer easement* "application" considered under the law in existence when he initiated the process for obtaining the

11

easements. See *Banks County*, 264 Ga. at 423 (1) (holding that plaintiffs who requested a written verification of their compliance with zoning regulations for use in a separate application for a sanitary waste permit had a vested right to obtain that *verification* based on the zoning regulations in effect at the time of their request).

Carson offers no other argument for why his actions to obtain the sewer easements gave rise to a vested right that his subsequent application for a land disturbance permit be decided under the zoning code that existed when he pursued the sewer easements. So we find no merit in his claim that he had obtained vested rights in this manner.

(b) *Alleged inadequacies of the vested rights determination procedure.*

Carson argues that the superior court erred in affirming the ZBA's decision denying his application for an administrative determination that he had vested rights because the county's zoning code contained no ascertainable standards or objective criteria governing that process. He argues that the lack of such standards and criteria made the determination procedure unconstitutionally vague and that, as a result, he was "entitled to approval" of his application.

But Carson cites no authority for the proposition that he received vested rights by virtue of these alleged inadequacies. Instead, he cites to cases that address

circumstances in which a local ordinance or code's lack of ascertainable standards or objective criteria for making an administrative decision had the effect of giving the decisionmaker unfettered discretion. See, e. g., *Hixon v. Walker County*, 266 Ga. 641, 642 (468 SE2d 744) (1996) (reversing the trial court's denial of landowners' petition for mandamus to approve building permits, which the county planning commission had denied based on general statements of purpose within the county land regulations, because those statements of purpose "contain no standard to control the discretion" of the planning commission in deciding whether to issue the permits); *FSL Corp. v. Harrington*, 262 Ga. 725 (425 SE2d 276) (1993) (reversing the trial court's denial of a landowner's petition for mandamus to approve a special-use permit for a landfill "[b]ecause the zoning ordinance authorizing the permit provides no ascertainable limits on the [county board of commissioner's] discretion to grant or deny applications"); *Dinsmore Dev. Co. v. Cherokee County*, 260 Ga. 727 (1) (398 SE2d 539) (1990) (reversing ruling denying landowners' application for a special-use permit to operate a private landfill because the county zoning ordinance did not have sufficient objective guidelines upon which to base the decision to grant or deny the permit); *Fleck & Assoc. v. City of Atlanta*, 260 Ga. 105, 106 (2) (b) (390 SE2d 396) (1990) (reversing trial court's denial of an application for an interlocutory injunction

13

to stay the city from enforcing a decision revoking the applicant's business license, noting that "[t]he city code purports to give city officials an absolute and undirected power to revoke any business license" without "advis[ing] as to those acts which are permitted, and those acts which are prohibited") (citation and punctuation omitted); *Crymes v. DeKalb County*, 258 Ga. 30, (364 SE2d 852) (1988) (holding that landowners were entitled to approval from the board of commissioners to use their property as a landfill because the ordinance at issue gave the board discretion in deciding whether or not to approve the use but did not contain guidelines to control that discretion); *Davidson Mineral Properties v. Monroe County*, 257 Ga. 215, 217 (1) (357 SE2d 95) (1987) (holding that zoning resolutions pertaining to permits for commercial or industrial buildings were "void because they improperly allowed uncontrolled discretion by the [county's board of commissioners] in granting or denying a permit application and [were] otherwise too vague, indefinite and uncertain to be enforceable").

The nature of the administrative decision in this case is fundamentally different than the nature of the decisions in the cases cited by Carson. Those cases concerned matters such as the issuance or revocation of permits, and the decisionmakers in those cases were tasked with deciding whether *or not* to take a specific action. Those

14

decisionmakers had discretion to issue a permit or not, or to revoke a license or not. The concern, as discussed above, was whether the relevant code or ordinance provided the necessary criteria or standards for containing that discretion.

Here, on the other hand, the ZBA is not tasked with exercising its discretion to decide whether or not to confer vested rights upon Carson. It is simply tasked with determining, under our state Constitution and applicable case law, whether such vested rights exist. If a landowner has vested rights under the applicable law, then the ZBA has no discretion to determine that he does not, and vice versa. There *are* ascertainable standards and objective criteria governing the vested rights determination, but they are found in Georgia case law, not in the zoning code. See generally *Ga. Dept. of Community Health v. Northside Hosp.*, 295 Ga. 446, 451 (761 SE2d 74) (2014) (acknowledging that a broader body of law — in that case, a larger statutory context — may provide the necessary specificity to keep the rules governing an administrative decision from being unconstitutionally vague).

Carson argues that the ZBA (through its planning director, Brown) is not authorized to determine whether a landowner has vested rights under state or federal law, but "is only authorized to interpret the provisions of the [zoning code]." We disagree. A determination of a landowner's vested rights is integral to many decisions

15

regarding the application of local regulation to property, and those decisions are properly made first at the local level, exhausting administrative remedies before redress may be sought in the courts. See *Elbert County v. Sweet City Landfill*, 297 Ga. 429, 433 (1) (774 SE2d 658) (2015). Moreover, this argument merely challenges the appropriateness of the administrative procedure the county has developed to make initial vested rights determinations; it does not support the remedy to which Carson claims he is entitled — a determination that he, in fact, has vested rights.

For these reasons, we find no merit in Carson's claim that he was entitled to a determination that he had vested rights because of procedural deficiencies in the zoning code.

3. *The action for mandamus, declaratory relief, and injunctive relief (Cases No. A20A2016 and A20A2017).*

Both sets of parties appeal from the superior court's summary judgment ruling in Carson's action for mandamus, declaratory relief, and injunctive relief. In Carson's appeal (Case No. A20A2016), he argues that the superior court erred in declaring that the moratorium was valid and in refusing to grant mandamus and injunctive relief that would have the effect of requiring Brown and Williams to process his permit application without regard to the moratorium. He also challenges a finding by the

superior court that Brown and Williams had not accepted his permit application for processing.

In Brown and Williams's cross-appeal (Case No. A20A2017), they argue that Carson failed to exhaust his administrative remedies and that the superior court erred in concluding otherwise. They also argue that the superior court erred in granting Carson's request for mandamus and injunctive relief requiring them to accept and process the permit application. And they challenge the superior court's conclusion that the emergency, temporary moratorium imposed in August 2016 was invalid. We consider the arguments in both appeals together, so we address them in the following order.

First, as detailed below, we conclude that this action is not barred by Carson's purported failure to exhaust administrative remedies. We decided that issue in *Carson I*, and our opinion in that case forecloses Brown and Williams's exhaustion-of-remedies argument.

Next, we conclude that the superior court properly held that a valid moratorium existed when Carson submitted his permit application in September 2016, by virtue of the September 1, 2016 resolution. This is so regardless of the validity of the county's earlier efforts in August to create a moratorium, so we do not need to

address Brown's and Williams's challenge to the superior court's specific findings and conclusions regarding those August actions.

Finally, we hold that the moratorium barred the county from accepting Carson's permit application. Consequently, Carson was not entitled to either mandamus or injunctive relief requiring Brown and Williams to accept that application and process it without regard to the moratorium. So we affirm in part and reverse in part the trial court's rulings pertaining to those claims for relief.

(a) *Failure to exhaust administrative remedies.*

As a threshold matter, Brown and Williams argue that the superior court should have dismissed Carson's action rather than ruling on its merits because Carson failed to exhaust administrative remedies. They contend that Williams's "release" of Carson's permit application was a decision subject to administrative appeal, which Carson was required to pursue before bringing this action in superior court.

But we rejected this argument in *Carson I*. We held that Carson was not required to pursue an administrative appeal before bringing this action in superior court because "no zoning decision was made on [his permit] application. . . . [T]he 'release' of the application back to Carson by Williams on September 9, 2016, did not amount to a rejection." *Carson I*, 348 Ga. App. at 710 (3) (b) (citations omitted).

18

The law of the case rule provides that "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case. . . ." OCGA § 9-11-60 (h). Brown and Williams argue that this rule does not apply here because there was a change in the evidentiary posture of the case after the *Carson I* decision. But the mere fact that the evidentiary posture changed does not necessarily render the law of the case rule inapplicable. Instead, to determine if the rule applies here, we must ask whether the new evidence requires a different conclusion regarding exhaustion of remedies than that reached in *Carson I*. See *Guthrie v. Wickes*, 295 Ga. App. 892, 895 (3) (673 SE2d 523) (2009) ("if subsequent to an appellate decision, the evidentiary posture of the case changes in the trial court, the law of the case rule does not limit or negate the effect that such change would otherwise mandate") (citation and punctuation omitted). See also *Pirkle v. Turner*, 281 Ga. 846, 847 (1) (642 SE2d 849) (2007) (the law of the case rule applied, despite a change in evidentiary posture, where the holding at issue concerned a legal question not affected by the new evidence); *Grindle v. Chastain*, 229 Ga. App. 386, 389 (2) (493 SE2d 714) (1997) (the law of the case rule applied, despite a change in evidentiary posture, where the new evidence was "substantially the same" as the prior evidence).

19

At issue here is *Carson I*'s holding that Williams's act of "releasing" the application was not a zoning decision subject to administrative appellate procedures. *Carson I*, 348 Ga. App. at 710 (3) (b). Brown and Williams argue that we should readdress this issue, rather than applying the law of the case rule, because there is now evidence questioning whether Williams had accepted Carson's application before "releasing" it to him. But this evidentiary dispute is not relevant to the *Carson I* holding. Even though that decision concerned a motion for judgment on the pleadings and Carson's pleadings had alleged that Williams had accepted the application, we acknowledged in *Carson I* that Brown and Williams disputed the point, and we expressly held that the dispute did not affect our holding. We stated:

> [I]n this case, in which Carson's application was simply "released" back to him due to a moratorium, we, like the trial court, conclude that no clear "decision" was made on the merits of Carson's application. Instead, even Brown and Williams's explanation that the moratorium prevented acceptance of such applications supports this conclusion: if the application could not be accepted, no decision *could* be rendered.

*Carson I*, 348 Ga. App. at 697 (1) (c) (i) (emphasis in original). Although we engaged in the above analysis in a section of our opinion addressing our appellate jurisdiction over Carson's direct appeal, we based our rejection of the exhaustion-of-remedies

20

argument on this holding that Williams's actions did not constitute a zoning decision (whether or not the application had been accepted). Id. at 710 (3) (b).

In summary, although Brown and Williams correctly point out that the case is now in a different procedural and evidentiary posture than it was in *Carson I*, they cite evidentiary differences that do not affect our *Carson I* holding. So this is not a case where application of the law of the case rule would "limit or negate the effect that such change [in evidence] would otherwise mandate." *Guthrie*, 295 Ga. App. at 895 (3). Our holding in *Carson I* rejecting the exhaustion-of-remedies argument is the law of the case, and the superior court was not required to dismiss the case on that ground.

(b) *Validity of the moratorium.*

Carson argues that the superior court erred in holding that, by virtue of the county's September 1, 2016 resolution, a valid moratorium was in place when Carson submitted his permit application. We disagree.

The record shows (and Carson does not dispute) that the county's board of commissioners adopted the resolution on September 1, 2016 at a regular board meeting. As we would do with a statute, we construe the terms of that resolution de

novo. See *City of Dunwoody v. Discovery Practice Mgmt.*, 338 Ga. App. 135, 138 (2) (789 SE2d 386) (2016).

The resolution stated that the county was in the process of revising its zoning code to increase certain square footage requirements. It stated that on August 9, 2016, the board had "adopted on a time-sensitive basis an emergency, temporary moratorium barring until September 8, 2016, acceptance of any applications for land development permits for RES3 [the zoning category applicable to Carson's property] to the extent they want to develop the RES3 at any lot square footage less than . . . 14,750 square feet[.]" (Punctuation omitted.) It stated that on August 23, 2016, the board had "approved on a time-sensitive basis" a motion to clarify the temporary moratorium, which among other things set a public hearing for September 1 on a continued moratorium. And it stated that the board had "conducted a properly noticed public hearing on September 1, 2016, to consider the possible extension of the existing temporary moratorium[.]"

The resolution then stated that the board "does hereby extend until December 7, 2016, the existing temporary moratorium on acceptance of applications for land disturbance permits for RES3-zoned properties that wish to build out a minimum lot

22

size less than 14,750 sq. ft, [with certain enumerated exceptions]." The resolution set forth the rationale for the moratorium,

> to maintain the status quo and allow the County to modify its [zoning code] such as to remove [existing provisions permitting lots of less than 14,750 square feet] without the County becoming inundated with land disturbance permit applications for RES3[-]zoned properties that otherwise will be impacted by the proposed [zoning code] change.

It specified that the "moratorium shall have no effect on the development of properties where the rights under a prior RES3 zoning have become vested nor shall this moratorium serve to disturb or hinder land disturbance permit applications that were tendered to the County prior to August 9, 2016." It was signed by the members of the board of commissioners.

Carson does not argue that the passage of the September 1 resolution was irregular in any way. Nevertheless, he argues that the resolution did not have the effect of creating a valid moratorium because the emergency, temporary moratorium that the resolution purported to extend was invalid due to procedural deficiencies. Carson argues that the September 1, 2016 resolution could not cure the deficiencies of the earlier, emergency moratorium.

But a local government may amend an ordinance to address infirmities. See *Maxim Cabaret v. City of Sandy Springs*, 304 Ga. 187, 190 (II) (816 SE2d 31) (2018). The authority Carson cites for his argument, *Newton County v. East Ga. Land & Dev. Co.*, 296 Ga. 18 (764 SE2d 830) (2014), tacitly acknowledges that point; our Supreme Court stated in that decision: "[W]e previously have rejected the idea that an ordinance void at the moment of its enactment can somehow be revived *without the formality required to fully enact it again*." Id. at 20 (emphasis supplied). A resolution is "a formal expression of the opinion or will of an official body . . . by vote." *Wayne County v. Herrin*, 210 Ga. App. 747, 749 (1) (437 SE2d 793) (1993) (citation and punctuation omitted). It follows from the language in *Newton County* emphasized above that by satisfying the necessary formalities for its passage, the September 1 resolution and the moratorium contained therein were valid, regardless of the validity of the emergency, temporary moratorium the resolution purported to extend.

We therefore hold that the September 1 resolution created a valid and effective moratorium. Our holding renders Carson's challenges to the validity of the emergency, temporary moratorium moot, so we do not reach the parties' arguments on that issue.

(c) *Effect of the moratorium on Carson's effort to develop the property at his desired density.*

The moratorium created by the September 1 resolution was in effect when Carson submitted his application for a land disturbance permit. And by its terms, the resolution barred the county from *accepting* Carson's permit application, because he sought to develop the land with a minimum lot size less than 14,750 square feet and his property did not fall into any of the categories excepted from the moratorium. For this reason, the trial court did not err in holding that the moratorium governed Carson's application, but the trial court did err in requiring Brown and Williams to accept and process that application.

So we affirm in part and reverse in part the trial court's rulings pertaining to Carson's requests for mandamus and injunctive relief. Specifically, we affirm the ruling denying Carson's claim for mandamus requiring Brown and Williams to process his permit application without considering the moratorium; but we reverse the trial court's ruling granting Carson's claim for mandamus requiring them to accept that application for processing, and we reverse the trial court's ruling granting Carson's request for an injunction against Brown and Williams prohibiting them from refusing to process the application.

25

*Judgment affirmed in part and reversed in part in Cases No. A20A2016 and A20A2017. Judgment affirmed in Case No. A21A0139. Doyle, P. J., and Hodges, J., concur.*